REVISED JANUARY 22, 2003

# In the United States Court of Appeals

# For the Fifth Circuit

---

m 02-10102

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL SHANE PHIPPS
AND
DEAN RAYBURN GILLEY,

Defendants-Appellants.

---

Appeals from the United States District Court
for the Northern District of Texas

---

January 15, 2003

Before JONES, SMITH, and SILER,[*] Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Michael Phipps and Dean Gilley appeal several aspects of their kidnaping, carjacking, and firearms convictions and sentences. Because 18 U.S.C. § 924(c)(1) does not unambiguously authorize their multiple convictions for a single use of a single firearm based on multiple predicate offenses, we vacate the sentences and remand for resentencing on all counts after one of the § 924(c)(1) counts is dismissed.

I.

On December 13-14, 2000, Paula Vastano-Pasquariello departed work and drove to her home outside Dallas; defendants and their accomplice, Julian Medina, followed her in Medina's car. As Pasquariello pulled into her carport, defendants approached her, Phipps put a gun to her head, Gilley restrained her in the back seat of her car, and they drove away with Phipps at the wheel. They stopped briefly to give the gun to Medina, then headed for the highway. Once they were on the highway, Gilley forced Pasquariello to perform sex acts with him, and he raped her. During and after the rape, Gilley continuously threatened Pasquariello with a knife as Phipps drove through the night.

Defendants switched positions near the Texas-New Mexico border. With Gilley driving, Phipps commanded Pasquariello to perform sex acts with him again. Gilley warned Phipps to wait until they arrived in Albuquerque, lest passing drivers see them. Upon arriving in Albuquerque, defendants forced Pas-

quariello to buy clothes for them and checked into a motel. Phipps again announced his desire to rape Pasquariello, but Gilley, who had become nervous, again intervened.

Defendants drove to a nearby alley. Pasquariello apparently believed that defendants planned to kill her, so she fled, screaming. Defendants did not give chase.

The FBI quickly apprehended defendants, no criminal masterminds. By the evening of December 15, just twenty-four hours after Pasquariello had escaped, an FBI agent swore a criminal complaint before a federal magistrate judge. The complaint included all of the foregoing facts and charged defendants with one count of kidnaping in violation of 18 U.S.C. § 1201(a)(1). The FBI arrested defendants the next day.

On January 3, 2001, a grand jury indicted defendants on one count of kidnaping, 18 U.S.C. § 1201(a)(1). On May 16, 2001, the grand jury returned a superseding indictment. Count 1 charged conspiracy to commit kidnaping, 18 U.S.C. § 1201(c); count 2 charged kidnaping, 18 U.S.C. § 1201(a)(1); count 3 charged use of a firearm during and in relation to the kidnaping, 18 U.S.C. § 924(c)(1); count 4 charged carjacking, 18 U.S.C. § 2119(2); count 5 charged using a firearm during and in relation to the carjacking, 18 U.S.C. § 924(c)(1).

The jury convicted defendants on all five counts. The district court sentenced them to 405 months' imprisonment on each of the conspiracy, kidnaping, and carjacking counts, with these sentences to run concurrently. It sentenced them to 84 months on count 3 (using a firearm during and in relation to the kidnaping) and 300 months on count 5 (using a

[*] Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

firearm during and in relation to the carjacking), with these sentences to run consecutively to each other and to the 405-month sentence. The total sentence is therefore 789 months, or 65 years and 9 months. The court also imposed, as a special condition of supervised release, that defendants shall not possess "sexually oriented or sexually stimulating materials."

Defendants challenge the timeliness of their indictments, their multiple § 924(c)(1) convictions, a jury instruction, the application of two sentencing guidelines, the length of their sentence for the carjacking conviction, and the special condition of supervised release. We address these questions in roughly chronological order from the pre-trial stage to trial to sentencing.

II.

Defendants argue that all counts but the kidnaping count were untimely under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 *et seq.*, and therefore should have been dismissed. We review interpretations of the STA *de novo* and related factual questions for clear error. *United States v. Martinez-Espinoza*, 299 F.3d 414, 416 (5th Cir. 2002). We disagree with defendants' contentions.

The STA requires an "indictment charging an individual with the commission of an offense" to be filed within thirty days of arrest. 18 U.S.C. § 3161(b). If "a complaint is filed charging such individual with an offense," and the indictment charging the offense is untimely, "such charge against that individual contained in such complaint shall be dismissed." 18 U.S.C. § 3162(a)(1). The complaint, issued on December 15, 2000, charged kidnaping. Defendants were arrested on December 16 and were timely indicted for

kidnaping on January 3, 2001. The superseding indictment, issued May 16, charged the remaining four counts. Defendants argue that these charges are untimely and must be dismissed under § 3162(a)(2).

Our precedents involve two kinds of allegedly untimely indictments. First, a defendant is charged in a complaint, arrested, and timely indicted for the offense charged in the complaint. Later (and after the STA period has run), a superseding indictment charges new offenses not contained in the complaint. *United States v. Bailey*, 111 F.3d 1229 (5th Cir. 1997); *United States v. Giwa*, 831 F.2d 538 (5th Cir. 1987). Second, a defendant is charged in a complaint, arrested, and timely indicted for an offense not charged in the complaint. Later (and after the STA period has run), a superseding indictment alleges the offense charged in the complaint. *Martinez-Espinoza*, 299 F.3d at 415-16; *United States v. Perez*, 217 F.3d 323 (5th Cir. 2000). This appeal presents the first situation, so *Bailey* and *Giwa* control.

In *Giwa* and *Bailey*, defendants were charged and arrested for a specific offense and, after the STA period had run, were charged, in a superseding indictment, with other offenses.[1] The court rejected the STA challenge in both cases and stated the general rule in *Giwa*: "If the Government fails to indict a defendant within thirty days of arrest, the Act requires *dismissal of only the offense or offenses*

---

[1] *Bailey*, 111 F.3d at 1235 (arrested for misdemeanor receipt of stolen goods and entering a military base, later indicted for sexual assault and felony receipt of stolen goods); *Giwa*, 831 F.2d at 540 (arrested for credit card fraud, later indicted for mail fraud and social security fraud).

3

*charged in the original complaint.*" *Giwa*, 831 F.2d at 541.[2] Here, the original complaint charged defendants with kidnaping, for which the grand jury timely indicted them. The superseding indictment charged separate offenses, which does not violate the STA under the rule of *Giwa* and *Bailey*.

At the same time, *Giwa* identified, and *Bailey* elaborated on, a "gilding" exception to this general rule. "[A] gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument." *Bailey*, 111 F.3d at 1236. As an example of a gilded charge, *Bailey* cited a case involving a superseding indictment that merely added new supporting facts to the charge in the complaint. *Id.* (citing *United States v. Bilotta*, 645 F. Supp. 369, 371 (E.D.N.Y. 1986)). Defendants cannot take advantage of the gilding exception, however, because the superseding indictment did not merely supply supporting facts for the kidnaping charge, but added four entirely new charges.

Defendants rely on an old and irrelevant Ninth Circuit case and a secondary treatise to cobble together the argument that the complaint *really* charges all five counts because the facts in the complaint are sufficient to establish each charge. They cite no caselaw for this argument, nor could they, because the theory directly contradicts *Giwa* and *Bailey*.

Moreover, the government may have had a good reason to charge defendants solely with kidnaping in the complaint and first indictment: The evidence collected by the time of the com-

plaint and first indictment may not have supported the other four counts.[3] Defendants' proposed rule would encourage the government to "throw the book" immediately and needlessly at suspects to avoid STA violations. We decline to adopt a rule that contradicts our precedents and encourages imprudent prosecutions.[4]

### III.
### A.

Defendants challenge their multiple § 924-(c)(1) convictions, arguing that they may be convicted under that statute only once for the

---

[2] *See also Bailey*, 111 F.3d at 1236 ("The clear mandate of § 3162(a)(1) requires dismissal of only those charges contained in the original complaint[.]") (quoting *Giwa*, 831 F.2d at 543).

[3] The government does not actually offer this explanation for the delay, but we assume it must occur often during investigations. Moreover, § 3162(a)(1) establishes a strict rule, so not even the less justifiable explanation of "negligent management" by the United States Attorney undermines an otherwise valid indictment. *Giwa*, 831 F.2d at 543.

[4] Defendants also argue that the Double Jeopardy Clause makes count 3 untimely under the STA. In particular, they contend that count 2 (kidnaping) and count 3 (using a firearm during and in relation to the kidnaping) fail the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Thus, counts 2 and 3 effectively charge the same offense, which the complaint also charged. The STA clock for count 3, on this theory, began to tick on December 16, 2000, and expired well before the government indicted defendants on count 3 on May 16, 2001. Defendants conclude, therefore, that the indictment on count 3 is untimely under the STA.

Defendants concede that *United States v. Martinez*, 28 F.3d 444, 446 (5th Cir. 1994), forecloses this argument, and they raise the question merely for further review. *Martinez* held that the Hobbs Act, 18 U.S.C. § 1951, and § 924(c)(1) satisfy the *Blockburger* test.

4

single use of a single firearm. We review questions of statutory interpretation *de novo*. *United States v. Hanafy*, 302 F.3d 485, 487 (5th Cir. 2002). As applied to the facts of this case, § 924(c)(1) is ambiguous, so we apply the rule of lenity and decide that the statute does not authorize multiple convictions for a single use of a single firearm based on multiple predicate offenses.

### 1.

Section 924(c)(1) states in relevant part that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence," be sentenced to varying terms of imprisonment based on the kind of firearm or the nature of its use. 18 U.S.C. § 924(c)(1). Kidnaping and carjacking are crimes of violence. 18 U.S.C. § 924(c)(3). Thus, defendants were charged with, and convicted of, two § 924(c)(1) counts (counts 3 and 5), one each for the predicate offenses of kidnaping and carjacking. They argue that § 924(c)(1) does not authorize, or, if it does, the Double Jeopardy Clause prohibits, these multiple § 924(c)(1) convictions for a single use of a single firearm based on multiple predicate offenses.

The government answers that *United States v. Privette*, 947 F.2d 1259 (5th Cir. 1991), controls this case and authorizes the dual convictions, but the government misapprehends the holding of *Privette*. The precise question presented was whether a verdict could be upheld if it did not link the multiple § 924(c)(1) convictions to distinct predicate offenses. *Id.* at 1262. *Privette* therefore addressed the predicate offenses necessary to support multiple § 924(c)(1) convictions, not the use,

carriage, or possession of a firearm or firearms necessary to support such convictions. We held in *Privette* that predicate offenses "separated by the measure of the double jeopardy clause can each support § 924(c) convictions," as long as "each firearms offense [is] sufficiently linked to a separate [predicate] offense to prevent two convictions under § 924(c) on the same [predicate] offense." *Id.* at 1262-63. We also noted that the government typically can establish a direct linkage in the indictment and jury charge. *Id.* at 1263.

*Privette*, then, is a constitutional decision based on the Double Jeopardy Clause. It does not address the precise statutory question whether § 924(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses.[5]

---

[5] Likewise, the parties cite several cases from other circuits that are not precisely on point, because they do not address the nature of the use, carriage, or possession of a firearm or firearms necessary to support multiple § 924(c)(1) convictions. Instead, they address the nature of the predicate offenses necessary to support such convictions or whether multiple convictions from the same indictment can be a "second or subsequent conviction" for sentencing purposes. *See, e.g.*, *United States v. Casiano*, 113 F.3d 420, 424-26 (3d Cir. 1997); *United States v. Johnson*, 25 F.3d 1335, 1336-38 (6th Cir. 1994) (en banc) (Siler, J.); *United States v. Luskin*, 926 F.2d 372, 374-78 (4th Cir. 1991); *United States v. Nabors*, 901 F.2d 1351, 1357-59 (6th Cir. 1990); *United States v. Fontanilla*, 849 F.2d 1257, 1258-59 (9th Cir. 1988). Like our decision in *Privette*, therefore, these cases do not bear on the main question at issue here, namely, whether § 924(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses.

In fact, *Privette* does not plainly indicate the number of firearms involved. The factual part of the opinion contains a singular reference to "weapons," which could mean that multiple firearms were involved, though not all weapons are necessarily firearms. *Id.* at 1261. The analysis part of the opinion, however, contains multiple and contradictory references to "a firearm" and "firearms." *Id.* at 1262-63. It is most likely that *Privette* involved multiple firearms, but at best the opinion is ambiguous on this point. Either way, *Privette* does not explicitly or implicitly control this case.

*Privette* is not completely beside the point, however, because it forecloses defendants' constitutional argument. They contend that the Double Jeopardy Clause prohibits multiple convictions for a single use of a single firearm based on multiple predicate offenses, even if § 924(c)(1) authorizes the convictions as a statutory matter. This argument is nothing more than a disagreement with *Privette*.

If the predicate offenses are "separated by the measure of the double jeopardy clause," *id.* at 1261, there can be no constitutional infirmities with multiple convictions authorized by § 924(c)(1). The predicate offenses of kidnaping and carjacking obviously have different elements, hence they pass the same-elements test of *Blockburger*, 284 U.S. at 304. Defendants therefore cannot challenge their multiple § 924(c)(1) convictions on constitutional grounds.

2.

Having dispensed with these preliminary matters, we now reach the main issue, namely, whether § 924(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses. This is purely a question of statutory interpretation, with two parts. First, we must ascertain the unit of prosecution for § 924(c)(1). *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952). We conclude that the unit of prosecution is the use, carriage, or possession of a firearm during and in relation to a predicate offense. Second, we must determine whether, given this unit of prosecution, § 924-(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses. Though this question is close, and reasonable minds could disagree, this very ambiguity compels us to apply the rule of lenity and answer the question in the negative. *See Bell v. United States*, 349 U.S. 81 (1955).

a.

The parties dispute what is the unit of prosecution for § 924(c)(1). The government argues that it is the predicate offense, whereas defendants argue that it is the use, carriage, or possession of a firearm. Both are correct, but only partly so. The odd nature of the statute makes the unit of prosecution neither the predicate offense nor the use, carriage, or possession of a firearm; rather, the unit of prosecution is the two combined.

This court has not expressly decided the unit of prosecution for § 924(c)(1), though *United States v. Correa-Ventura*, 6 F.3d 1070 (5th Cir. 1993), suggested the answer. There the defendant was convicted of one count of § 924(c)(1) based on two predicate offenses and multiple firearms. *Id.* at 1072-73. He challenged the jury instruction for his § 924-(c)(1) conviction because it allowed the jury to find him guilty without unanimously agreeing on which particular firearm he had used. *Id.* at 1075-76. We rejected this challenge, explaining in part that "[t]he mere carrying or

6

use of a firearm is not the criminal *actus reus* proscribedSSrather it is the employment of the weapon in the context of another predefined crime. . . . Accordingly, the plain language of the statute does not imply a requirement of unanimity as to the particular firearm employed." *Id.* at 1083.

Although *Correa-Ventura* did not directly address the question, this passage nonetheless suggests that the unit of prosecution is the use, carriage, or possession of a firearm during and in relation to a predicate offense, with slightly more emphasis on the use, carriage, or possession of a firearm. The text of § 924-(c)(1) bears out this suggestion: The conduct of using, carrying, or possessing a firearm constitutes the active verbs ("any person who . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm"), whereas the predicate offenses appear in a separate clause ("during and in relation to any crime of violence or drug trafficking crime"). Moreover, the many subsections of § 924(c)(1) adjust the sentence for a conviction based on the kind of firearm or the nature of its use during the predicate offense, not on the kind or nature of the predicate offense.

The decision in *Simpson v. United States*, 435 U.S. 6, 10 (1978), also indicates that the unit of prosecution for § 924(c)(1) is the use, carriage, or possession of a firearm during and in relation to a predicate offense, with slightly more emphasis on the use, carriage, or possession of a firearm. The Court explained that "§ 924(c) creates an offense distinct from the underlying federal felony." In other words, § 924(c)(1) does not criminalize the predicate offenses, for example, kidnaping and carjacking, which are elsewhere proscribed. And, "[t]o base a statute's unit of prosecution on an offense that the statute does not prohibit is illogical." *United States v. Camps*, 32 F.3d 102, 109 (4th Cir. 1994).

Though the emphasis is on the use, carriage, or possession of a firearm, and not on the predicate offense, simple use, carriage, or possession of a firearm also is not the unit of prosecution. Many citizens exercise their Second Amendment rights, *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 2362 (2002), by routinely using, carrying, or possessing a firearm, and § 924(c)(1) obviously does not prohibit that law-abiding conduct. Instead, it regulates the use, carriage, or possession of a firearm only during and in relation to a predicate offense. Thus, the unit of prosecution for § 924(c)(1) is the use, carriage, or possession of a firearm during and in relation to a predicate offense. In so deciding, we agree with the similar reasoning of the Fourth Circuit in *Camps* and disagree with the contrary conclusions of the Second and Sixth Circuits.[6]

b.

This unit of prosecution aptly frames our

---

[6] *See United States v. Taylor*, 13 F.3d 986, 993-94 (6th Cir. 1994) ("The purpose of § 924-(c)(1) . . . is to target those defendants who choose to involve weapons in an underlying narcotics crime or crime of violence. Consequently, the predicate offense, not the firearm, is the object of § 924(c)(1)."); *United States v. Lindsay*, 985 F.2d 666, 674-75 (2d Cir. 1993) ("When viewed as a whole . . . this firearms statute is ambiguous as to the appropriate unit of prosecution."). We, like the Fourth Circuit, disagree with *Taylor*, because it conflicts with the text of § 924(c)(1) and apparent congressional intent, and with *Lindsay* because it creates ambiguity with an interpretation not supported by text or logic. *See Camps*, 32 F.3d at 109.

task. Were the unit of prosecution the predicate offense, we easily could affirm defendants' multiple § 924(c)(1) convictions based on the multiple predicate offenses. Likewise, were the unit of prosecution the mere use, carriage, or possession of a firearm, we just as easily could vacate one of the convictions. But given the true unit of prosecution, we must determine whether, as a matter of statutory interpretation, § 924(c)(1) authorizes multiple convictions for a single use of a single firearm during and in relation to multiple predicate offenses.[7]

"Congress could no doubt" authorize such convictions; "[t]he question is: did it do so?" *Bell*, 349 U.S. at 82-83. We cannot say that § 924(c)(1) unambiguously authorizes multiple convictions for a single use of a single firearm during and in relation to multiple predicate offenses, so we apply the rule of lenity.

By its text, § 924(c)(1) criminalizes the use of a firearm during and in relation to a predicate offense. The statute imposes penalties on "any person who, during and in relation to any crime of violence . . . uses . . . a firearm." 18 U.S.C. § 924(c)(1)(A). Given the unit of prosecution, this language allows for only as many counts as there are uses of the firearm.[8] Defendants "used" the firearm only once, namely, when Phipps put the

firearm to Pasquariello's head.

True enough, this single use allowed defendants to commit two crimes. By brandishing the firearm, they forced Pasquariello to surrender her car, and they abducted her. They could have committed either offense without committing the other: They could have taken Pasquariello's car without abducting her, or *vice versa*. In this sense, the single use of the firearm served two purposes. Yet, just as motive often is the essential fact at trial but generally not a statutory element, § 924(c)(1) criminalizes the use of a firearm during and in relation to the predicate offense, not in regard to a defendant's purposes in using the firearm.

The legislative history of § 924(c)(1) offers some, albeit limited, support for this interpretation. Representative Poff, the sponsor of the original version of § 924(c)(1), declared that its purpose was "to persuade the man who is tempted to commit a felony to leave his gun at home." 114 CONG. REC. 22,231 (1968). Senator Mansfield, who sponsored one of the original amendments to § 924(c)(1), stated that the law "provides for the first time a separate and additional penalty for the mere act of choosing to use or carry a gun in committing a crime under federal law." 115 CONG. REC. 34,838 (1969). Though these oft-cited statements are hardly definitive, they indicate that some of the original authors of § 924(c)(1) aimed the law at the choice to use a firearm during and in relation to a predicate offense. Defendants chose to use a single firearm a single time, suggesting that they should face only a single count of violating § 924(c)(1).

We readily acknowledge, however, the reasonableness of the government's position. The

---

[7] From this point forward, we speak only of use, not of carriage or possession, because defendants undoubtedly used the firearm during their crimes. *See Bailey v. United States*, 516 U.S. 137, 144 (observing that the "use" offense of § 924(c) requires "active employment" of a firearm).

[8] Or, if defendants had not used their firearm, the language allows as many counts as the number of firearms carried or possessed.

government's initial premise that the unit of prosecution for § 924(c)(1) is the predicate offense weakens its argument. Yet, one could accept, as the unit of prosecution, the use of a firearm during and in relation to a predicate offense, and still reasonably argue that § 924-(c)(1) permits multiple convictions for a single use of a single firearm during and in relation to multiple predicate offenses.

The crux of this argument would be the unusual neither-fish-nor-fowl quality of § 924-(c)(1), which criminalizes neither unadorned use of a firearm nor the predicate offense, but only the two combined, as the unit of prosecution indicates. If § 924(c)(1) were a simple firearm statute unrelated to other offenses, defendants obviously would face only one count. As written, however, § 924-(c)(1) criminalizes the use of a firearm during and in relation to a predicate offense. With two predicate offenses related to the single use, one might argue, defendants therefore should face two counts.

Though the government's position does not persuade us, it is not unreasonable, but the statute's ambiguity compels us to apply the rule of lenity, under which a court should resolve doubts about an ambiguous criminal statute in favor of the defendant. *United States v. Reedy*, 304 F.3d 358, 367-68 (5th Cir. 2002). The Supreme Court first and most famously applied the rule in *Bell*, 349 U.S. at 82, in which the petitioner was convicted of two violations of the Mann Act's prohibition against knowingly transporting "any woman or girl" in interstate commerce for immoral purposes, based on his transporting two women at the same time in the same vehicle. The Court acknowledged that "argumentative skill . . . could persuasively and not unreasonably reach either of the conflicting constructions." *Id.* at

83. The Court therefore held that "the ambiguity should be resolved in favor of lenity." *Id.*[9] Because § 924(c)(1) is ambiguous on the facts of this case, we must follow *Bell* and conclude that the statute does not unambiguously authorize multiple convictions for a single use of a single firearm based on multiple predicate offenses.

Only two other circuits seem to have addressed the precise question whether § 924-(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses, and both have applied the rule of lenity.[10] In *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998), the defendant was convicted of killing a witness in violation of 18 U.S.C. § 1512, first degree murder while armed in violation of D.C. CODE §§ 22-2401, -3202, and two counts of § 924(c)(1). Noting that it had already found § 924(c)(1) ambiguous in the converse factual situation of

---

[9] *See also Smith v. United States*, 508 U.S. 223, 246 (1993) (Scalia, J., dissenting) ("Even if the reader does not consider the issue to be as clear as [we] do, he must at least acknowledge, [we] think, that it is eminently debatable——and that is enough, under the rule of lenity, to require finding for [defendants] here.").

[10] Two Tenth Circuit cases appear, on their facts, to uphold multiple § 924(c)(1) convictions for a single use of a single firearm based on multiple predicate offenses. *See United States v. Romero*, 122 F.3d 1334 (10th Cir. 1997); *United States v. Floyd*, 81 F.3d 1517 (10th Cir. 1996). In neither case, though, did the court directly address the question. Instead, *Romero* addressed whether a second § 924(c)(1) conviction in the same criminal proceeding is a "second or subsequent" conviction under § 924(c)(1)(C), *Romero*, 122 F.3d at 1343-44, and *Floyd*, 81 F.3d at 1526-27, addressed the constitutional double jeopardy question.

9

multiple § 924(c)(1) convictions based on a single predicate offense, the court applied the rule of lenity. *Wilson*, 160 F.3d at 749 (citing *United States v. Anderson*, 59 F.3d 1323, 1333 (D.C. Cir. 1995) (en banc)). The court deemed this reasoning "no less applicable where a single use of a gun results in more than one offense," and therefore applied the rule of lenity to these facts as well. *Id.*

In *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002), defendant was convicted of one count of distribution and one count of possession with intent to distribute, both in violation of 21 U.S.C. § 841, and two counts of § 924(c)(1). An undercover agent purchased some of the defendant's cocaine stash in a confirmatory buy and, several minutes later, other agents raided the defendant's house, where they discovered the remainder of the stash and a firearm. *Id.* at 201-02. The court agreed with "a widely-shared view that the statute's text is ambiguous" and applied the rule of lenity. *Id.* at 207. In particular, the court held that § 924(c)(1) "does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct." *Id.*

By discussing *Wilson* and *Finley*, we do not mean to suggest that we agree with their interpretation of § 924(c)(1) based on the particular facts presented in those cases.[11]

Rather, they merely illustrate the difficulties in interpreting § 924(c)(1) and the not infrequent need to resolve ambiguities in favor of criminal defendants via the rule of lenity.

Finally, we stress that our holding is limited by the unusual fact that defendants gave the firearm to Medina immediately after using it. Had, for example, they kept the firearm and used it to restrain or intimidate Pasquariello later, we might have affirmed their multiple convictions.[12] We also might have done so if defendants had used, carried, or possessed multiple firearms when they took Pasquariello's car and kidnaped her.

These examples, however, are not the facts before us. In what surely must be a rare event, defendants used a single firearm a single time for a dual criminal purpose, then immediately discarded it. In light of this extraordinary fact, § 924(c)(1) does not unambiguously authorize multiple convictions for a single use of a single firearm based on multiple predicate offenses.

"The proper remedy for multiplication of punishment is to vacate the sentences on all the counts and remand for resentencing with instructions that the count elected by the gov-

---

[11] In particular, we are skeptical of, and do not adopt, the Second Circuit's holding in *Finley*, 245 F.3d at 207, that § 924(c)(1) does not authorize multiple convictions based on "continuous" possession of a firearm during "simultaneous" predicate offenses consisting of "virtually" the same (continued...)

(...continued) conduct. Aside from the fact that the predicate offenses in *Finley* were not simultaneous, we suspect that this test creates more ambiguity than it resolves by importing a temporal concept into § 924(c)(1). *See Finley*, 245 F.3d at 208-11 (Winter, J., dissenting).

[12] *See Wilson*, 160 F.3d at 749 ("[T]here may be circumstances in which such [distinct] offenses could support more than one § 924(c) chargeSSas where, for example, the evidence shows distinct uses of the firearm, first to intimidate and then to kill.").

10

ernment be dismissed. The defendant[s are] then to be resentenced." *Privette*, 947 F.2d at 1263 (citation omitted). Thus, we vacate the instant sentences and remand for resentencing on all counts after the government successfully moves to dismiss either count 3 or count 5.

### B.

Gilley argues that the district court committed reversible error by inadvertently instructing the jury, on one occasion, that it could find him guilty of the conspiracy count by a preponderance of the evidence.[13] Gilley did not object to the instruction at trial, so we review the inadvertent instruction for plain error.[14] *See* FED. R. CRIM. P. 52(b).

Plain error review is very limited. There must be "error" that is "plain" and that affects "substantial rights," and even then we have discretion not to correct the error unless it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citation omitted). We conclude that the district court's inadvertent mistake is not reversible error, and certainly not reversible plain error.

The question is not whether the court's unwitting mention of the preponderance of the evidence standard while discussing count 1 is erroneous[15]SSeveryone concedes it isSSbut whether this single misstatement makes the instruction defective as a whole. *See Cage v. Louisiana*, 498 U.S. 39, 41 (1990). Moreover, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991)).[16]

---

[13] Phipps adopts Gilley's argument, but the erroneous instruction refers only to Gilley. Phipps therefore cannot challenge his convictions on this ground.

[14] Gilley contends that an erroneous instruction on the burden of proof is not susceptible to plain error review. In *Sullivan v. Louisiana*, 508 U.S. 275 (1993), the Court held that an erroneous instruction on the meaning of reasonable doubt is a structural error not susceptible to harmless error review. Harmless error, however, is a rule of constitutional law, whereas plain error is a rule of appellate procedure. An error not susceptible to harmless error review is nevertheless susceptible to plain error review if the defendant did not object at trial. *See, e.g.*, *United States v. Shunk*, 113 F.3d 31, 36 (5th Cir. 1997). In any event, *Sullivan* does not control this case, because here the general jury instruction on reasonable doubt was proper.

[15] The district court stated:

> Now, once the jury has reached a unanimous decision as to Count 1 of the indictment as it affects Defendant Gilley, then the foreperson will write in the decision, the unanimous decision, either guilty or not guilty.

> If the jury concludes from a *preponderance of the evidence* that the defendant has committed the offense charged by Count 1 of the indictment, that is, Defendant Gilley, then the verdict is guilty and the foreperson will write that in. If the jury concludes unanimously that the government has not proved *beyond a reasonable doubt* that Defendant Gilley committed the offense charged by Count 1 of the indictment, then the foreperson will write in not guilty.

(Emphasis added.)

[16] In *Cage*, the Court suggested the speculative
(continued...)

Gilley argues that the misstatement infected the entire jury instruction and irretrievably prejudiced his conviction on all counts by allowing the jury to find him guilty by less than beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). There is, however, no reasonable likelihood, under a *Cage-Victor* analysis, that the jury in fact did apply the misstatement and convict Gilley of count 1, much less all counts, by a preponderance of the evidence. *Cage* and *Victor* involved a dubious definition of "reasonable doubt" in the general jury instruction on the meaning of reasonable doubt. This situation is much more troublesome than is what happened in this case, a single slip of the tongue in one particular instruction.

Moreover, Gilley concedes that the general jury instruction on reasonable doubt, plus all other jury instructions, correctly stated the law. In the nearly identical case of *United States v. Musgrave*, 483 F.2d 327, 335 (5th Cir. 1973), we affirmed a conviction despite a similar error, because the "[i]solated statements which appear prejudicial when taken out of context [were] innocuous when viewed in the light of the entire trial."[17] During the jury charge in the instant case, the court correctly instructed, on fifteen occasions,

on the meaning of reasonable doubt and its applicability.[18]

Finally, we have affirmed several convictions with worse errors in the general jury instruction on reasonable doubt; we disapproved of some particular wording but upheld the instruction as a whole.[19] The isolated and inadvertent error here is certainly no worse than are the errors we excused in those cases. Though we encourage the courts to be vigilant in their jury instructions, we rarely will reverse a conviction based on a district court's insignificant slip of the tongue.

### IV.
#### A.

Phipps contends that the district court should not have sentenced him under the criminal sexual abuse guideline, U.S.S.G. § 2A3.1, because he did not commit sexual assault on Pasquariello. Reviewing the district court's legal interpretation of the sentencing guidelines *de novo* and its factual findings for clear error, *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999), we affirm.

The district court used the criminal sexual abuse guideline, U.S.S.G. § 2A3.1, instead of the kidnaping guideline, U.S.S.G. § 2A4.1, to sentence Phipps, because § 2A3.1 has a higher total offense level. *See* U.S.S.G. § 3D1.3(a).

---

(...continued)
"could have" inquiry. *McGuire*, however, expressly overruled that suggestion and oriented the inquiry to what the jury in fact did.

[17] Gilley counters with *United States v. Murray*, 784 F.2d 188 (6th Cir. 1986). *Murray*, however, is distinguishable, because the misstatements occurred in the general jury instruction on reasonable doubt, and the Sixth Circuit deemed the erroneous instruction reversible when combined with another error.

---

[18] *See Musgrave*, 483 F.3d at 335 (observing that "[i]n his lengthy charge to the jury in the present case, the trial judge correctly depicted the reasonable doubt standard at least nine times").

[19] *See, e.g.*, *Dupuy v. Cain*, 201 F.3d 582, 586 (5th Cir. 2000); *Schneider v. Day*, 73 F.3d 610, 611 (5th Cir. 1996); *Weston v. Ieyoub*, 69 F.3d 73, 74 (5th Cir. 1995); *Gaston v. Whitley*, 67 F.3d 121, 121-22 (5th Cir. 1995).

The court reasoned that § 2A3.1 applies to Phipps even though he did not assault Pasquariello, because he was responsible for Gilley's assault under the relevant conduct guideline, U.S.S.G. § 1B1.3(a)(1). Phipps argues that the court clearly erred in that he did not assault Pasquariello and could not have foreseen Gilley's assault.

The court did not clearly err by applying § 2A3.1. Medina testified that defendants declared their intent to steal a car from a woman whom they could also kidnap for the purpose of raping her. Phipps forced Pasquariello into the car at gunpoint and restrained her by driving the car while Gilley forced her to perform sex acts on him and then raped her. Phipps attempted sexually to assault Pasquariello, and he stopped only because of Gilley's fear of detection by passing drivers. Given this evidence, the court easily concluded that Phipps reasonably could foresee Gilley's sexual assault on Pasquariello and thus could be liable for the assault under § 1B1.3(a)(1).

## B.

Defendants assert the district court clearly erred by enhancing their sentence under the obstruction of justice guideline, U.S.S.G. § 3C1.1. Reviewing the court's factual findings for clear error, *United States v. Smith*, 203 F.3d 884, 891 (5th Cir. 2000), we affirm.

Section 3C1.1 permits a two-level enhancement for obstruction of justice during an investigation. The enhancement is not appropriate merely because a defendant denies his guilt. U.S.S.G. § 3C1.1, cmt. n.2, but only if the defendant "provid[es] a materially false statement to a law enforcement officer that *significantly obstructed* or impeded the official investigation or prosecution of the instant offense." *Id.* at cmt. n. 4(g) (emphasis added).

Both defendants misidentified Medina during the FBI's investigation. Gilley identified him as an unnamed and unknown black man to whom he paid five dollars to drive him and Phipps to Pasquariello's home. Phipps identified Medina as a local man named Javier, whose identity he otherwise did not know. The investigating agent testified that these lies delayed her inquiry for several months.

Because of the conflicting false statements and defendants' untrustworthiness, the agent was forced to subpoena and search defendants' telephone records for the unknown third defendant. She eventually interviewed Medina, who confessed to his involvement. This discovery was critical to the investigation, because Medina, who gave the firearm to defendants, provided the only evidence, other than Pasquariello's testimony, that defendants had used a firearm. Based on these facts, the district court found that defendants' misidentification of Medina "significantly obstructed" the FBI's investigation, so the court enhanced the sentences by two levels.

Defendants argue that the district court clearly erred, because the investigating agent did not fully believe their lies and would have subpoenaed their telephone records anyway. We rejected this same argument in *Smith*, 203 F.3d at 891, in which we affirmed an enhancement because a defendant misidentified her female co-defendants as black males to throw the investigators off the trail. The defendant contended that the investigation was not "significantly obstructed or impeded" by her lie. *Id.* We rejected this reasoning solely because the affirmative misidentification sent investigators on the wrong trail, even though they admitted they would have found the co-defendants eventually in any event. *Id. Smith* therefore forecloses defendants' argument and

supports the district court's finding that the evidence justified the enhancement.

## C.

The district court erred by sentencing defendants to 405 months on the carjacking count, because the maximum sentence is 300 months. 18 U.S.C. § 2119(2). The question is how we should treat this error. Defendants argue that we must vacate and remand, whereas the government contends that we may decline to correct the error, because the carjacking sentence runs concurrently with the proper 405-month sentences for kidnaping and conspiracy to kidnap. Because defendants must be resentenced anyway, we vacate the carjacking sentence as well.

Ordinarily, we would let this kind of erroneous sentence stand without correction. Defendants give no good reason to create make-work for ourselves, the district court, or counsel. We correct plain error only where we determine that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Meshack*, 225 F.3d 556, 577 (5th Cir. 2000), *as modified*, 244 F.3d 367 (5th Cir.) (citation omitted), *cert. denied*, 534 U.S. 861 (2001). Though the error here could not be more plain, defendants are not prejudiced, because the carjacking sentence runs concurrently with the valid longer sentences for conspiracy and kidnaping. *Meshack*, 244 F.3d at 368. Moreover, defendants do not assert "that our decision not to correct the sentence will have collateral consequences." *Id.*

If we had affirmed defendants' convictions and sentences in all other respects, we would not disturb this sentence. Yet, we vacate their sentences and remand for resentencing on all counts as a result of the § 924(c)(1) error. Be-cause further proceedings are now unavoidable, we remand for resentencing on the carjacking conviction, as well.

Moreover, at the sentencing hearing the district court announced its desire to sentence defendants to the maximum term permitted by law. When the court made the carjacking sentence run concurrently with the conspiracy and kidnaping sentences, it assumed two valid § 924(c)(1) convictions. With only one valid § 924(c)(1) conviction, the court may wish to reconsider whether the carjacking sentence should run concurrently or consecutively with the conspiracy and kidnaping sentences. We therefore remand with instruction that the district court may reconsider this question under our limited remand rule. *See United States v. Marmolejo*, 139 F.3d 528 (5th Cir. 1998).

## D.

Defendants aver that their special condition of supervised release is unconstitutionally vague. They did not object at or after the sentencing hearing, so we review for plain error. *United States v. Wright*, 86 F.3d 64, 64 (5th Cir. 1996). We affirm.

As a special condition of supervised release, the district court prohibited defendants from possessing "sexually oriented or sexually stimulating materials" and from "patroniz[ing] any place where such material or entertainment is available." Defendants do not argue that this condition violates their First Amendment rights, but rather their "separate due process right to conditions of supervised release that are sufficiently clear to inform [them] of what conduct will result in [their] being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir.), *cert. denied*, 123 S. Ct. 515 (2002).

14

Defendants rely on *Guagliardo* and *United States v. Loy*, 237 F.3d 251 (3d Cir. 2001), in both of which the courts vacated a condition of release prohibiting the defendant from possessing "pornography." The courts reasoned that the category of "pornography" is too broad to give a probationer adequate notice of what he may and may not possess while on probation. *Guagliardo*, 278 F.3d at 872; *Loy*, 237 F.3d at 264. Defendants aver that this reasoning also applies to the category of "sexually oriented or sexually stimulating materials."

Although we have not yet encountered this kind of condition, our general approach to other vague conditions leads us to reject defendants' argument. In *United States v. Paul*, 274 F.3d 155, 166-67 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 1571 (2002), we affirmed a condition prohibiting defendant from visiting locations "frequented by minors." We acknowledged some vagueness with the condition but observed that "[t]his lack of specificity is not necessarily fatal to the validity of the restriction." *Id.* at 166. We also stated that "conditions of probation can be written SS and must be read SS in a commonsense way" because "it would be impossible to list" every instance of prohibited conduct, hence "[s]entencing courts must inevitably use categorical terms to frame the contours of supervised release conditions." *Id.*

The category of "sexually oriented or sexually stimulating materials" admittedly is somewhat vague, but *Paul* requires it be read in a commonsense way. Such a construction compels us to disagree with defendants' suggestion that the condition could apply to newspapers and magazines that contain lingerie advertisements or even to the "Song of Solomon." Moreover, the prohibition on patronizing sexually oriented establishments refers, with sufficient precision, to places such as strip clubs and adult theaters or bookstores.

We therefore read this second condition to narrow the first condition to the kind of sexually explicit materials available at such places. Though a more definite condition might be desirable, the district court has "wide discretion in imposing terms and conditions of supervised release," *Paul*, 274 F.3d at 164, and a commonsense reading of the special condition satisfies the dictates of due process.

Furthermore, this question comes to us on plain error review. Assuming that the court on remand imposes the same sentence minus the twenty-five-year consecutive sentence for the invalid § 924(c)(1) conviction, defendants will have a 489-month sentence. Thus, they will not be released until they are at least nearly sixty years old, and even then only if they are model prisoners. (Of course, the district court on remand might impose a longer sentence, which would delay the release date further.) Under these circumstances, it is hard to say that the special condition affects their substantial rights or warrants the exercise of our plain-error discretion. Once defendants are released from confinement, they can request a more definite and precise condition in light of forty more years' development of the sexually oriented business industry. 18 U.S.C. § 3583(e)(2).[20]

---

[20] Because we review the special condition for plain error, we reserve the question whether we would uphold a similar special condition if the objection is preserved in the district court and reviewed *de novo*. *United States v. Reyes-Maya*, 305 F.3d 362, 366 n.2 (5th Cir. 2002) (noting that

(continued...)

15

For the reasons stated, we AFFIRM the convictions, VACATE the sentences, and REMAND for resentencing on all counts remaining after one of the § 924(c)(1) counts is dismissed.

(...continued)
the court may reach different conclusions on the same question based on the standard of review).

16