IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-40469

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOSE ZAVALA; SIMON RICARTE BALDERAS, JR, also known as BJ;
RENE ZAVALA

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:06-CR-27-3

Before KING, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants Jose Zavala ("Jose"), Rene Zavala ("Rene"), and Simon Ricarte Balderas Jr. ("Balderas") (collectively "Appellants") appeal their convictions and sentences for conspiracy to distribute drugs, possession with intent to distribute drugs, and possession of a firearm in furtherance of a drug trafficking crime. Appellants contend that (1) the evidence is insufficient to support their convictions, (2) the district court erred by failing to instruct the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

jury that a mere buyer-seller relationship is insufficient to support a conviction for conspiracy to distribute drugs, and (3) the district court erred by sentencing them for multiple violations of 18 U.S.C. § 924(c). Jose and Rene also contend that their sentences violate the Eighth Amendment. We affirm the convictions of each defendant on all but three counts of the indictment, reverse the convictions on those three counts, and remand for resentencing.

## I. FACTS AND PROCEEDINGS

Appellants were charged with and convicted of participating in a methamphetamine ("meth") drug trafficking ring spanning Texas, Louisiana, and Florida. At trial, the government adduced testimony from several indicted co-defendants and confidential informants ("CIs"). The relevant evidence can be summarized as follows:

Jose and his brother Rene distributed large amounts of meth directly to Balderas and to several others in the Tyler, Texas area. Typically, Rene would drive from Tyler to Dallas, pick up meth from one of several sources, and return with it to the Tyler residence that he shared with Jose ("the Zavala Residence"). On several occasions, Balderas waited for Rene at the Zavala Residence. On Rene's return, Jose would divide the meth into smaller quantities suitable for distribution and would sell at least some of the meth to Balderas. Jose also sold meth to several other persons, including Sam Leal ("Leal").

In February 2005, John Carroll ("Carroll"), a customer of Balderas and Jose, moved to Florida and began distributing meth in Miami. Drugs were supplied to Carroll by Balderas, who was receiving at least some of his drugs from Jose and Rene. Balderas reportedly traveled to Miami to check on the meth distribution business on two occasions, once with Leal.

In mid-2005, the Zavala Residence was burglarized, and money and drugs were taken. Jose and Rene suspected that Leal and Jacinto Martinez ("Martinez") were responsible for the burglary. Leal and Martinez subsequently

made an agreement with "Tino," one of Jose and Rene's suppliers, that if Leal and Martinez worked to pay off the loss, they could purchase meth directly from Tino instead of going through Jose and Rene. Thereafter, Leal and Martinez used Tino as a direct supply source in the Tyler area.

Also in mid-2005, Paul Fazande ("Fazande") met with Balderas, Leal, and Martinez at Balderas's house to discuss Fazande moving to Shreveport to further develop the meth distribution enterprise. Balderas, Leal, and several others began delivering meth to Fazande in Shreveport for resale. Fazande testified that approximately $60,000 a week was returned to Balderas and Leal in Tyler from the sale of the meth in Shreveport.

Fazande was arrested in Shreveport in the fall of 2005. During the course of that arrest, police found 343 grams of meth, drug ledgers, and scales. Additionally, the police learned that Balderas had picked up $10,000 from Fazande in Shreveport the morning before his arrest, and Balderas's mother and father had picked up $11,500 from Fazande on the day of his arrest.

Fazande's girlfriend, Ashley Bonner ("Bonner") was arrested with Fazande but was released. Balderas subsequently called Bonner and inquired about Fazande's arrest. As Bonner had knowledge of Fazande's customers, Balderas proposed that she take over Fazande's meth distribution in Shreveport. Bonner then began selling meth in Shreveport and, on at least one occasion, accompanied Balderas to pick up meth from Martinez. Bonner also accompanied Balderas to pick up meth from Jose.

Cale Cassidy ("Cassidy") purchased meth from Rene, Jose, and Balderas in January and February of 2006. On January 7, 2006, Cassidy traveled to Dallas with Rene to purchase one pound of meth from "Mario." Jose and Rene distributed part of this meth to Drew Burkhart ("Burkhart"), who had met Balderas through Jose. Burkhart was also introduced to Leal and Martinez by Jose, after which Burkhart bought meth from them. On January 24, 2006,

Cassidy purchased about one ounce of meth and received a .22 caliber rifle from Jose.  On February 3, 2006, Cassidy again went to Dallas with Rene.

In March 2006, a federal grand jury indicted Jose, Rene, and Balderas, as well as several other co-conspirators.  In November 2006, a jury returned guilty verdicts against all three Appellants.  Jose and Balderas were sentenced to 1,822 months in prison.  Rene was sentenced to 1,788 months.

## II. ANALYSIS

### A. Sufficiency of the Evidence

#### 1. Standard of Review

As Appellants' motion for a judgment of acquittal was denied, we review that denial de novo.[1]  "In doing so, we consider the evidence, all reasonable inferences drawn from it and all credibility determinations in the light most favorable to the Government, and affirm if a reasonable jury could find the offense's essential elements beyond a reasonable doubt."[2]

#### 2. Drug Conspiracy Charge

"To find a defendant guilty of participating in a drug conspiracy, the government must show (1) there was an agreement between two or more persons to possess controlled substances with the intent to distribute; (2) the defendant knew of the conspiracy and intended to join it; and (3) the defendant voluntarily participated in the conspiracy."[3]  The government may prove a conspiracy by circumstantial evidence alone;[4] however, we have repeatedly "stressed that we

---

[1] United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998).

[2] Id.

[3] United States v. Parker, 505 F.3d 323, 331 (5th Cir. 2007) (internal quotation marks omitted).

[4] Medina, 161 F.3d at 872.

will not lightly infer a defendant's knowledge of and participation in a conspiracy."[5]

Our review of the record convinces us that the government presented sufficient evidence for a rational jury to conclude that Balderas, Jose, and Rene conspired among themselves and with others to distribute drugs in Texas, Louisiana, and Florida. At trial, several witnesses testified that Jose and Rene supplied Balderas with large amounts of meth over an extended period of time. Although an isolated buyer-seller relationship alone does not constitute a conspiracy to distribute drugs, we have recognized that "[a] pattern of sales for resale between the same persons, together with details supplying a context for the relationship, might well support a finding of conspiracy."[6] Balderas frequently brought clients to the Zavala Residence when he purchased meth from Jose and Rene, and Appellants shared many of the same clients. Appellants were recorded discussing their meth business, including collection methods and other members of the conspiracy. A rational jury could have concluded from the evidence that Jose, Rene, and Balderas conspired with each other to distribute meth.

Jose and Rene contend that even if they did conspire with Balderas, they were not part of Balderas's conspiracy to distribute drugs in Louisiana and Florida. Although the government did not present direct evidence linking Rene and Jose to the conspiracy in Florida and Louisiana, we are satisfied that the government presented sufficient circumstantial evidence for the jury to infer that Jose and Rene were part of the overall conspiracy to distribute drugs. Trial testimony linked Jose and Rene to Balderas at the time that Balderas was orchestrating the meth distribution network in Louisiana and Florida.

---

[5] United States v. Dean, 59 F.3d 1479, 1485 (5th Cir. 1995) (internal quotation marks omitted).

[6] United States v. Moran, 984 F.2d 1299, 1303 (5th Cir. 1993).

Fazande's girlfriend, Bonner, went with Balderas to pick up meth from Jose subsequent to the time when the Zavalas claim that they had stopped serving as Balderas's supplier. All Appellants were transacting business with Cassidy in early 2006. The jury could have inferred from this evidence that Jose and Rene continued to serve a source of supply for Balderas and that they were part of Balderas's drug distribution network. We hold that the evidence is sufficient to support the jury's verdict.

3. Possession of a Firearm in Furtherance of a Drug Trafficking Crime

18 U.S.C. § 924(c)(1)(A) states that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be sentenced to an additional term of imprisonment. Nevertheless, the "'mere presence' of a firearm at the scene of drug activity does not" itself equal possession in furtherance of the activity.[7] The government must present "'evidence more specific to the criminal defendant, showing that his or her possession actually furthered the drug trafficking offense.'"[8] To determine whether a defendant possessed the gun in furtherance of drug trafficking, we consider several factors including: "(1) the type of drug activity being conducted; (2) the accessibility of the firearm; (3) the type of weapon; (4) whether the weapon is stolen; (5) whether the possession is lawful; (6) whether the gun is loaded; (7) the weapon's proximity to drugs or drug profits; and (8) the time and circumstances under which the gun is found."[9] Overall, the possession must further, advance, or help forward the underlying offense.[10]

---

[7] United States v. Charles, 469 F.3d 402, 406 (5th Cir. 2006).

[8] Id. (emphasis added) (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414 (5th Cir. 2000)).

[9] Id.

[10] Ceballos-Torres, 218 F.3d at 415.

6

i. Counts 9, 11, and 13

On September 8, 2005, CI Donna Taylor ("Taylor") purchased an ounce of meth from Balderas. While at his residence, she observed a firearm on the coffee table next to the drugs. According to Taylor, Balderas always did business with a gun present, and he referred to it as his "baby." Taylor stated that she never saw Balderas conduct a drug transaction without his gun being present. This evidence is sufficient for the jury to infer that Balderas was using the gun for security in furtherance of his drug transactions.

Jose and Rene insist that they cannot be held accountable for Balderas's possession of the firearm because such possession was not reasonably foreseeable. Under Pinkerton v. United States,[11] "[a] party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of a conspiracy, even if that party does not participate in or have any knowledge of the substantive offense."[12] For a defendant to be convicted of the substantive offenses of a coconspirator under Pinkerton, the act must have been reasonably foreseeable to the defendant.[13]

We have consistently held that, under Pinkerton, it is foreseeable that a drug defendant's co-conspirator will carry a firearm during a drug transaction when a substantial quantity of drugs is involved.[14] Although Balderas sold only one ounce of meth to Taylor, she testified that she observed at least a pound of meth during the transaction. The large amount of meth present at the time of the sale makes it foreseeable that Balderas would conduct the sale of drugs with

---

[11] 328 U.S. 640 (1946).

[12] United States v. Jensen, 41 F.3d 946, 955-56 (5th Cir. 1994) (alteration in original) (internal quotation marks omitted).

[13] United States v. Dean, 59 F.3d 1479, 1489 (5th Cir. 1995).

[14] Id. at 1490 n.20.

a firearm. The conviction of each Appellant on Count Nine of the indictment is supported by sufficient evidence.

Counts Eleven and Thirteen of the indictment relate to Balderas's sales of meth to Taylor on September 9, 2005 and September 20, 2005, respectively, under essentially identical circumstances as the September 8 sale. The government presented sufficient evidence to support Appellants' convictions on these two additional counts of the indictment.

### ii. Count 14

On September 21, 2005, Taylor again visited Balderas's residence. Taylor testified that during the visit, she purchased a rifle for the purpose of shooting coyotes on her farm. She testified that the purchase price for the rifle had been negotiated on the previous day while she was at Balderas's house to purchase meth. Taylor did not buy any meth from Balderas on the day that she bought the rifle.

Appellants contend that the government failed to prove that Balderas's possession of the rifle was in furtherance of Count One of the indictment, conspiracy to distribute, because Taylor was buying the gun of a type not typically related to drug transactions for a purpose unrelated to drugs, and no meth sale or overt act of the conspiracy occurred during or in proximate to the sale of the gun. We agree.

Unlike Counts Nine, Eleven, and Thirteen of the indictment, no sale of meth took place while Balderas was selling the rifle sold to Taylor. The only evidence presented by the government to support the allegation that Balderas was selling the rifle in furtherance of the drug conspiracy is that Taylor observed (1) drugs at Balderas's residence and (2) between $50,000 and $100,000 in cash, which was allegedly there for the purpose of buying meth at a later time. This evidence is insufficient to support an inference that this particular rifle "furthered, advanced, or helped forward" the drug conspiracy. Accordingly, we

hold that this conviction is not supported by sufficient evidence and must be vacated.

### iii. Count 17

On January 19, 2006, Toribia Gloria Medina ("Medina") and Manuel Escobar ("Escobar") were arrested by law enforcement agents at the Comfort Suites located at 3307 North Fourth Street in Longview, Texas. During the arrest, law enforcement agents seized ten ounces of meth. After the arrest, Medina's house in Tyler, Texas was searched, and law enforcement agents seized two sets of scales, meth paraphernalia, and an SKS assault rifle.

Appellants assert that the evidence is insufficient to prove that the rifle confiscated from Medina's residence was possessed in furtherance of the drug trafficking charge because the only evidence in the record is that the firearm was found at the same location as the drugs. Once again, we agree.

The record in this case lacks specific evidence connecting the weapon to the drug activity. There is no reference to the proximity of the gun to the drugs, the accessibility of the gun, whether the gun was loaded, whether it was lawfully obtained, or whether ammunition was present in the house. As previously noted, not every weapon found at the location of a drug sale may be considered to be possessed "in furtherance" of a drug crime.[15] In the absence of additional evidence, we cannot conclude that the mere presence of the weapon at Medina's home is sufficient to prove that it was possessed in furtherance of the drug trafficking crime.

### iv. Count 19

On January 24, 2006, Cassidy purchased meth from Jose while at the Zavala Residence. Cassidy indicated that he also wanted to purchase a handgun. Jose stated that he would not sell a handgun to Cassidy, but he

---

[15] Charles, 469 F.3d at 406.

offered to give him a rifle without charge. Shortly thereafter, Jose retrieved the gun, a .22 caliber rifle that was inside a carrying case, from a closet in an adjacent room and gave it to Cassidy.

Appellants insist that there is insufficient evidence to prove that the Jose possessed this rifle in furtherance of the drug transaction. The indictment was based on Jose's possession of the .22 caliber rifle, not the handgun that Cassidy attempted to purchase. Appellants contend that there is no evidence that the rifle was loaded, stolen, or stored in close proximity to drugs or money. Additionally, they assert that Jose could not have been using the gun to further the drug trafficking offense because he did not know what type of gun it was, and he indicated that he had no need for it.

Based on the facts in the record, we agree with Appellants that the government failed to produce sufficient evidence to prove that Jose possessed the gun in furtherance of the drug activity. The rifle was not stored in the same location as the meth; there is no evidence that the gun was loaded or that it was stolen; a .22 caliber rifle is not typical of guns used or possessed in connection with drug transactions; Jose stated that he did not know what type of gun it was; and he gave the gun to Cassidy free of charge, indicating that he had no need or use for the gun.

### 4. Possession with Intent to Distribute
#### i. Counts 2, 3, 5, 8, 10, 12, 18 and 20

These counts of the indictment relate to Balderas and Jose's possession and sale of meth to various CIs. Appellants contend that the government failed to present sufficient evidence from which the jury could infer Pinkerton co-

conspirator liability for these transactions because the individual meth sales were not reasonably foreseeable. We disagree.

Our review of the record demonstrates that the government presented sufficient evidence for the jury to conclude that Appellants conspired together to distribute meth throughout Texas, Louisiana, and Florida. As members of the conspiracy, Balderas and Jose's sales of meth related in Counts Two, Three, Five, Eight, Ten, Twelve, Eighteen, and Twenty of the indictment were reasonably foreseeable. Under Pinkerton, there is sufficient evidence to support Appellants' convictions under these counts.

### ii. Counts 4, 7, 16, and 25

These counts of the indictment relate to sales of meth by co-conspirators Mark Anthony Gomez ("Gomez"), Fazande, Medina, Escobar, and David Branch ("Branch") to various CIs. Rene and Jose assert that there is insufficient evidence to support their convictions because several of the co-conspirators testified that these co-conspirators did not work directly with either Rene or Jose. Our review of the record reveals, however, that the government presented sufficient testimony at trial from which the jury could have concluded that Gomez, Fazande, Medina, Escobar, and Branch were all members of the conspiracy and that their participation was reasonably foreseeable by Appellants. The Appellants' argument regarding these counts is without merit.

## B. Buyer-Seller Jury Instruction

Appellants contend that the district court erred in refusing to instruct the jury that evidence of a mere buyer-seller relationship is insufficient to support a conviction for conspiracy. This argument is foreclosed by Fifth Circuit precedent;[16] however, Appellants raise this issue on appeal to preserve it for further review.

---

[16] See United States v. Mata, 491 F.3d 237, 241-42 (5th Cir. 2007).

C. Sentencing Issues

1. Consecutive Sentences under 18 U.S.C. § 924(c)

i. Standard of Review

We review questions of statutory interpretation de novo.[17]

ii. Merits

Appellants contend that the district court erred in sentencing them for multiple violations of § 924(c)(1). They argue that Balderas's possession of a firearm, as charged in Counts Nine, Eleven, Thirteen, and Fourteen of the indictment, was a single, continuous possession and therefore constituted only one violation of § 924(c). In support of this contention, Appellants rely on our decision in United States v. Phipps.[18]

In Phipps, we held that § 924(c)(1) does not authorize multiple convictions for a single use of a firearm based on multiple predicate offenses.[19] The defendants in Phipps were convicted of two counts of violating § 924(c)(1), one for the predicate offense of kidnaping and another for car jacking.[20] We determined that the language of § 924(c)(1) allowed the court to impose only one conviction for every "use" of the firearm, then held that the defendants "used" the firearm only once — when one defendant threatened the victim with the firearm during the kidnaping.[21] In doing so, we noted that even though the single "use" of the gun allowed the defendants to commit two crimes, kidnaping

---

[17] United States v. Phipps, 319 F.3d 177, 183 (5th Cir. 2003).

[18] Id.

[19] Id.

[20] Id. at 181.

[21] Id. at 186-87.

and car jacking, there could be only one conviction under § 924(c) because there was only one use.[22]

Unlike the situation in Phipps, Balderas "used" the firearm on more than one occasion. The three separate drug transactions underlying counts 9, 11, and 13 occurred on different days. Taylor returned each day to make a new purchase of meth and thus to commit a new crime. During each visit, Balderas "used" the weapon to further his commission of a separate and distinct crime of drug trafficking. Under these circumstances, the district court did not err by sentencing the defendants for multiple violations of § 924(c).

2. Eighth Amendment Claim

Rene and Jose insist that their prison sentences of more than one hundred years each for the conduct of co-conspirators violate the Eighth Amendment. As we reverse Rene and Jose's convictions on three of the counts charged in the indictment, we must vacate their entire sentences and remand for resentencing on only those convictions that we affirm today. Whatever sentences are imposed on remand, they are virtually certain to differ from the original sentences. This makes the Eighth Amendment challenges moot, at least for the time being, so we do not address them today.

III. CONCLUSION

We affirm the Appellants' convictions on all counts other than Counts Fourteen, Seventeen, and Nineteen of the indictment. We reverse Appellants' convictions under Counts Fourteen, Seventeen, and Nineteen, and we remand this case for resentencing for the affirmed convictions, in accordance with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.

---

[22] Id.

13