# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 11-50907

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

VICTOR ESQUIVEL, also known as Youngster,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC No. 2:09-CR-820-5

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Victor Esquivel was convicted of conspiracy to conduct the affairs of an enterprise through a pattern of racketeering in violation of 18 U.S.C. § 1962(d) and two counts of violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959. He appeals the district court's denial of his motion to suppress a police interview and a cellular telephone number. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50907

I.

In connection with a homicide investigation, Sergeant Cabrera of the Texas Department of Public Safety ("DPS") enlisted Sergeants Whitton and Lozano to conduct surveillance on the residence of a known gang member, Esquivel. On the date in question, Esquivel went in and out of the residence talking on a cell phone, eventually emerging with a small bag in his hand and started looking around.

Sergeant Whitton contacted Sergeant Cabrera and informed him that Esquivel had been located. Sergeant Cabrera noted that more than one weapon may have been used in the homicide and that Esquivel may be in possession of the murder weapons. Eventually, a vehicle appeared carrying three individuals, Esquivel got in, and the vehicle drove away. After following the vehicle and observing numerous traffic violations, the agents pulled it over.

The agents approached the vehicle with their weapons drawn, ordered the occupants to exit, frisked them for weapons, and told them to lie on the ground. The driver consented to a search of the vehicle, but no weapons or contraband were discovered. The agents then permitted the driver and occupants to leave. Sergeant Whitton asked Esquivel if he would voluntarily consent to an interview regarding his whereabouts over the previous 24 hours. Esquivel denied any wrongdoing, but consented to be interviewed.

Esquivel, handcuffed pursuant to DPS policy, rode with Sergeants Whitton and Lozano to the DPS station. When they arrived at the DPS station, the handcuffs were removed and Esquivel was led to a training room. Sergeants Whitton and Lozano waited with Esquivel until Sergeant Cabrera and another DPS agent arrived. The four agents interviewed Esquivel for an hour and a half. Following the interview, Esquivel provided his cellular telephone number and left the DPS station.

2

No. 11-50907

Esquivel moved to suppress his statements during the interview and the cellular telephone number he provided. After a suppression hearing, the district court denied his motion. Esquivel was convicted and now appeals the denial of his motion to suppress.

## II.

### A. Standard of Review

When evaluating a denial of a motion to suppress, we review a district court's conclusions of law *de novo* and its findings of fact for clear error. *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). We view the evidence in the light most favorable to the prevailing party, which in this case is the Government. *See id.*

### B. Valid *Terry* Stop

Esquivel essentially argues that his statements during the interview and the cellular telephone number he provided should be suppressed because they are fruits of a warrantless traffic stop in violation of his Fourth Amendment rights. It is well established that "warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993). The *Terry* stop is one of these exceptions, and the *Terry* analysis provides the framework for evaluating the reasonableness of such a traffic stop. *United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

*Terry* provides that police officers may briefly detain an individual, despite a lack of probable cause to arrest, when they have an objectively reasonable suspicion that criminal activity is afoot. *United States v. Baker*, 47 F.3d 691, 693 (5th Cir. 1995). The reasonable suspicion supporting the stop must be based on "specific and articulable facts and rational inferences[] that justifies the intrusion." *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013) (citing *Terry*, 392 U.S. at 21), *cert. denied*, 134 S. Ct. 1760 (2014). It

3

cannot be established by an officer's "mere hunch or unparticularized suspicion." *Jaquez*, 421 F.3d at 341. During the stop, the officers may perform a pat down to ensure the individual is not armed. *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010) ("In order to ensure their safety during the stop, police may frisk the subject for weapons that they reasonably suspect he may carry.").

After finding Sergeant Whitton's testimony credible, the district court concluded the agents' initial stop of the vehicle was a valid *Terry* stop. Esquivel was a murder suspect who had been pacing outside of his residence carrying a bag that may have contained one or more of the murder weapons. Once the agents started following the vehicle carrying Esquivel, they observed the driver commit several traffic violations, such as speeding and failing to signal a turn. At one point, the vehicle came to a stop at an intersection for an extended period of time despite the absence of any conflicting traffic. It was at this point the agents also observed the occupants trying to figure out who was following them and making furtive movements. Taken as a whole, the facts found by the district court give rise to an objectively reasonable suspicion sufficient to justify stopping the vehicle. *See Baker*, 47 F.3d at 693.

Further, the agents' actions during the stop were reasonably related in scope to the circumstances that led to the stop. *See Terry*, 392 U.S. at 19–20 ("[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."). The agents' decision to approach the vehicle with their weapons drawn, order the occupants to exit the vehicle, and subsequently pat down the occupants was objectively reasonable given the circumstances surrounding the stop, especially in light of Esquivel's criminal history and the fact that he was suspected of being involved in Garza's murder.

No. 11-50907

*United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993) ("Clearly, using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination—do not automatically convert an investigatory detention into an arrest requiring probable cause."). Moreover, even if Esquivel was handcuffed during the stop—a finding the district court declined to make—the stop would still be reasonable. *See, e.g., Abdo*, 733 F.3d at 565 (holding that a detention remained a valid *Terry* stop despite detaining the suspect at gunpoint, handcuffing him, and placing him in a police car because "police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect").

Based on the facts found by the district court, the agents' stop of the vehicle was supported by an objectively reasonable suspicion and did not exceed the scope of a *Terry* stop. Therefore, Esquivel's argument that his statements during the police interview and cellular telephone number are fruits of an unconstitutional seizure, and therefore must be suppressed, is without merit.

C. Voluntary Interview

Esquivel further argues that the statements he made during the interview, along with the cell phone number he provided, must be suppressed because they were acquired through a custodial interrogation in violation of his constitutional rights. However, as the district court observed, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the Court's holding in *Miranda*]." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (citation and internal quotation marks omitted). Sergeant Whitton testified, and Esquivel does not contest, that he asked Esquivel to come to the DPS station to talk about his whereabouts over the past day. He explained to Esquivel that it was "strictly

5

voluntary" and that Esquivel did not have to come with him.  However, Esquivel chose to accompany the agents to the DPS station.  Based on this testimony, the district court found that Esquivel's statement "was freely and voluntarily given."  When, as here, the district court observed live testimony during the suppression hearing, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses."  *See Santiago*, 410 F.3d at 197.  We cannot conclude that the district court clearly erred in finding Esquivel's statement voluntary based on Sergeant Whitton's testimony.  Therefore, Esquivel's argument that the evidence should have been suppressed because it was part of an invalid custodial interrogation is without merit.

AFFIRMED.