**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 98-50829**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**KIMBERLY S. SMITH and CARMELITA MITCHELL,**

**Defendants-Appellants.**


_____

Appeals from the United States District Court
for the Western District of Texas
_____
February 14, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this consolidated direct appeal, Kimberly S. Smith ("Smith") and Carmelita Mitchell ("Mitchell") seek vacatur of the judgments of conviction and sentences entered by the United States District Court for the Western District of Texas, Judge Orlando Garcia, presiding. Having concluded an exhaustive review of the record and for the reasons set forth below, we find no error and therefore affirm both Smith's and Mitchell's convictions and sentences.

## I.   BACKGROUND

The two appellants were named, along with Talayah Sullivan ("Sullivan"), Stephanie Graves ("Graves"), and Nekeidra Shawon Lewis ("Lewis"), in a two-count, second superseding indictment returned in the San Antonio Division of the Western District of Texas on April 1, 1998.  The conspiracy alleged in that indictment charged the five co-defendants with conspiring to commit bank robbery; more specifically, conspiring to take from the person and presence of another, by force, violence and intimidation, a sum of money belonging to and in the care, custody, control, management and possession of the Bank of America, a bank whose deposits were then insured by the FDIC, all in violation of 18 U.S.C. §§ 371 and 2113(a).  As the manner and means of the conspiracy, the government alleged that the defendants obtained information concerning bank procedures from co-conspirator Smith, who was employed at the Bank of America.

With respect to the indictment returned against the defendants, Count One charged all five co-defendants with conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 371 and 2113(a); and Count Two charged all five with aiding and abetting bank robbery and using a dangerous weapon in the commission of the offense, in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d).  Sullivan, Graves, and Lewis pleaded guilty, and

pursuant to their plea and cooperation agreements, Graves and Lewis testified on behalf of the government during the jury trial of Appellants Smith and Mitchell.

On May 8, 1998, the jury returned its verdict, finding Smith guilty on Counts One and Two and Mitchell guilty on Count One only. Smith was sentenced to a 60-month term of imprisonment for Count One and a 175-month term of imprisonment for Count Two, both sentences to be served concurrently, followed by a three-year term of supervised release on Count One and a concurrent five-year term of supervised release on Count Two. Mitchell received a 60-month term of imprisonment, followed by a three-year term of supervised release. Both appellants, along with their convicted co-defendants were jointly and severally ordered to pay $68,417 in restitution to the Bank of America,[1] with fines being waived based on the defendants' inability to pay.

## II. DISCUSSION

The appellants have each raised numerous issues, several of which overlap one another. We will address the various issues below, roughly in a chronological sequence, with trial matters addressed first and sentencing matters addressed last.

---

[1] Defendant Lewis, however, was ordered to pay only her $300 share of the robbery proceeds.

## A. *Sufficiency of the Evidence*

Mitchell argues that the evidence presented to the jury was insufficient to support her conviction.  The standard of review for a sufficiency of evidence claim is whether, after viewing the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See* **United States v. Jones**, 185 F.3d 459, 464 (5th Cir. 1999) (*citing* **Jackson v. Virginia**, 443 U.S. 307, 317-18, 99 S. Ct. 2781 (1979)); **United States v. Mulderig**, 120 F.3d 534, 546 (5th Cir. 1997), *cert. denied,* 118 S. Ct. 1510 (1998).

In reviewing a sufficiency of evidence claim for conspiracy to commit bank robbery, we are guided by the following principles set forth in **United States v. Burton**, 126 F.3d 666 (5th Cir. 1997):

> "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." **United States v. Bermea**, 30 F.3d 1539, 1551 (5th Cir. 1994).  The standard of review is the same regardless whether the evidence is direct or circumstantial. **United States v. Cardenas**, 9 F.3d 1139, 1156 (5th Cir. 1993).
>
> To establish a conspiracy under 18 U.S.C. § 371, the Government must prove (1) an agreement between two or more persons, (2) to commit a crime, and (3) an overt act committed by one of the conspirators in furtherance of the agreement. **United States v. Gray**, 96 F.3d 769, 772-73 (5th Cir. 1996), *cert. denied,* 117

4

S. Ct. 1275 (1997).  The conspiracy need not be proved by direct evidence, but agreement may be inferred from circumstantial evidence, such as concert of action.  *United States v. Schmick*, 904 F.2d 936, 941 (5th Cir. 1990). "When the [G]overnment attempts to prove the existence of a conspiracy by circumstantial evidence, each link in the inferential chain must be clearly proven."  *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir. 1982). Proof of "mere association" with persons involved in criminal activity is insufficient, by itself, to establish participation in a conspiracy.  *Id.*

*Burton,* 126 F.3d at 669.

Here, Mitchell alleges that her conviction was almost completely dependent on the testimony of her alleged accomplices. She argues that her accomplices' testimony, though perhaps not facially incredible, was "entirely unsubstantial," and thus, under *United States v. Garner*, 581 F.2d 481 (5th Cir. 1978), her conviction may not rest solely upon the uncorroborated "unsubstantial" testimony of her accomplices.

We note that Mitchell failed to move for judgment of acquittal at the close of the government's case, and that she also did not so move for judgment of acquittal at the close of evidence.  Thus, under *United States v. Vaquero*, 997 F.2d 78, 82 (5th Cir. 1993), this panel must restrict its sufficiency review to whether Mitchell's convictions resulted in a "manifest miscarriage of justice," which exists only if the record "is devoid of evidence pointing to guilt or if the evidence on a key element of the offense is so tenuous that a conviction would be shocking."  *Id.*

5

(citing *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir. 1992)). Unfortunately for Mitchell, our precedent mandates this narrowly restricted review of the sufficiency of evidence in light of her failure to ever move for a judgment of acquittal. Through this narrow lens we have considered all of the evidence presented in a light most favorable to the government, and have given the verdict the benefit of all reasonable inferences and credibility determinations.

Our exhaustive review of the record leaves us with no doubt that there was enough evidence to satisfy the standards set forth above. The evidence, when construed in favor of the verdict, and with all reasonable inferences drawn in favor thereof, reveals that Graves, Smith, and Sullivan met at Mitchell's house where they planned the bank robbery. At the meeting, Smith (the Bank of America insider) instructed Mitchell and Sullivan on various aspects of how to conduct the robbery. On the day of the robbery, Mitchell called Graves while she was en route to the bank to warn that they should wait because the bank manager was still there. And after the robbery, the evidence reveals that Graves drove to Mitchell's sister's house where Mitchell greeted them. Mitchell helped separate the money and Mitchell told the others to take the bands off the money because they may have contained tracking devices. Mitchell and Sullivan took the bands and burned them. And finally, Mitchell met with Sullivan, Graves, and Smith to

discuss hiring a lawyer to represent Smith; Mitchell received $499 from Graves for the lawyer fund.

From this evidence, a jury could most certainly have reasonably inferred that Mitchell voluntarily joined the conspiracy knowing its unlawful purpose and that she committed at least one overt act in furtherance of the conspiracy. Furthermore, and in light of Mitchell's having failed to properly preserve her sufficiency claim, we are unable to conclude that the record is devoid of any evidence pointing to her guilt or that the evidence on a key element of her offense of conviction is so tenuous that a conviction would be shocking. For these reasons, Mitchell is not entitled to relief on this issue.

### B. *Alleged prosecutorial misconduct*

Both appellants argue for the first time on appeal that the prosecutor committed misconduct by failing to call a witness referenced during opening statements (specifically, Sullivan), and that this misconduct served to deny them a fair trial. Since this issue was not presented to the trial court, it is to be deemed waived unless the lower court's action constituted plain error. *See* **United States v. Mann**, 161 F.3d 840, 867 n.91 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1766 (1999); Fed.R.Crim.P. 52(b) (allowing for notice of plain errors affecting substantial rights which were not presented to the trial court). If the error complained of for

the first time on appeal is plain and affected substantial rights, this Court may provide relief.  *See **United States v. Gaudin***, 115 S. Ct. 2310, 2322 (1995) (stating that if there is a forfeited error, which is plain, and which affects substantial rights, the decision to correct that forfeited error is in the sound discretion of the Courts of Appeals).  And under this standard, we should not exercise our discretion to correct a forfeited error unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."  ***Id.*** (internal quotations omitted).  As is more fully set out below, in light of the government's response, we decline to exercise our discretion to correct this obviously forfeited error.[2]

The following is an excerpt from the prosecutor's opening statement containing the statements for which appellants claim plain error:

> "You will hear that Ms. Smith and Ms. Mitchell's conspiracy unraveled pretty completely on May the 25th of 1997 when Talayah Sullivan, one of the robbers, spoke to the FBI and explained that she had attended a meeting two to three weeks before this robbery.  That meeting was attended by Kimberly Smith, by Carmelita Mitchell, that they had agreed, along with Stephanie Graves and another young woman named Nikki Martin, to do the Bank of America.

---

[2]  It bears mentioning here that the appellants did not ever request cautionary instructions or urge this issue as a grounds for relief in a motion for a new trial in the district court.  The possibility for prejudice should have been most obvious to either of the appellants' counsel at the time of trial.

"You'll hear that they were warned, 'Thursday is the day, that's the day when we sell money or get money to sell to Brink's. That's when we've got most of the money on hand,' $93,000 it proved to be. That's when they were told to tell the employees, you robbers, tell the employees, 'Keep your hands on the counter because there are buttons under the counter to set off a silent alarm and a button to set off a camera.'

"You are going to hear Ms. Sullivan say, 'We were also warned that these tellers will follow directions, so we should be sure to tell the tellers. "Don't give us a tracking device."' That'll explain why no tracking device was put in the backpack.

"You're going to hear Ms. Sullivan say, 'We were also told we could rob the teller drawers or the vault, and we should be sure to move into the vault where the vast majority of the money would be.' And the trackers, tracking devices, are contained in $20 bills."

* * *

"...an incoming telephone call occurred while they were there, according to Ms. Sullivan, and that call warned the participants to check the money for trackers, to make sure we've gotten all the tracking devices off."

The appellants urge that the government's failure to call Sullivan in light of what was promised to the jury served to unfairly bolster the testimony of the other witnesses who testified as to what they learned from Sullivan.

The first two paragraphs above are least troubling because arguably the prosecutor was forecasting what the evidence was going to show, i.e., he was explaining that from other evidence, the jury would hear what Sullivan said, etc., not that Sullivan would appear to say it or that they would not receive that information from a

9

source other than Sullivan.

With respect to the latter paragraphs, the government concedes that Sullivan's testimony was promised, and that it was not delivered.[3] However, the government distinguishes the case relied upon by appellants, *United States v. Murrah*, 888 F.2d 24 (5th Cir. 1989), by noting that Sullivan was not the exclusive source of the statements referred to in the opening statement, and that unlike the scenario in *Murrah* where the promised evidence was never presented to the jury in any form after opening statements, the promised evidence here was presented by alternative sources. According to the government, the substance was delivered as promised, just not in the as-promised form of Sullivan's live testimony.

Based upon our exhaustive review of the record, we find the government's distinction of *Murrah* to be persuasive. The full record supports the government's contention that the evidence presented through other witnesses was consistent with virtually everything stated during opening statements, i.e., the record conclusively establishes that the jury was not infected or unduly influenced by promised evidence that was not ultimately presented

---

[3]  In a footnote to its brief, regarding AUSA William Baumann's representations outside of the appellate record, the government states that Sullivan was displeased with her attire the morning of her testimony, and despite government efforts to get her more suitable attire, she was not comfortable taking the stand, and so the prosecutor, confident in the strength of Graves' anticipated testimony, decided to simply forgo calling Sullivan at all.

in any form.[4]

We find that the prosecutor's opening statement was not unfairly prejudicial, nor did it affect any substantial rights. And furthermore, since we find in light of the record evidence that the alleged error in allowing such an opening statement did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings," we will not exercise our discretion to correct this forfeited error. Accordingly, we find that the appellants were not denied a fair trial as a result of prosecutorial misconduct and the appellants are not entitled to relief on this issue.

### C. Evidence of two false loan applications submitted by Smith

Appellant Smith argues that the district court erred in allowing the government to admit into evidence copies of two vehicle loan applications submitted by Smith to purchase (1) a BMW automobile for $16,070 with a down payment of $1,500, and (2) a Ford F-150 pick-up truck. She contends that these loan

---

[4] Specifically, with respect to the latter three paragraphs of the opening statement excerpted above: Graves testified that Sullivan learned from Smith that the tellers would follow directions and that certain money was marked; Graves testified that Smith informed Sullivan about getting money from the vault; and Graves also testified that Mitchell came out of the kitchen with a phone in hand when they were counting the money and announced that the money bands might have tracking devices in them and that they had to be removed.

11

applications contained false statements,[5] and that the government used the applications as undisclosed 404(b) character evidence to impeach Smith's credibility.

We review evidentiary rulings by the district court for an abuse of the district court's discretion over such matters. *See United States v. Castillo*, 77 F.3d 1480 (5th Cir. 1996). However, if a defendant fails to object at trial, this Court will only review evidentiary rulings for plain error. *See United States v. Krout*, 66 F.3d 1420, 1434 (5th Cir. 1995). As noted above, an error is plain when in the context of the entire case, it is "so obvious and substantial that [the district court's] failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991).

Here again, Smith's counsel completely failed to object to the introduction of the loan applications at trial. However, at a pretrial hearing on Smith's motion in limine to exclude the credit applications, Smith objected to their introduction for any 404(b) purpose. Despite this objection Smith concedes that she did not object to the applications being introduced so long as the government stayed away from discussing the false statements made on the applications regarding her employment. Indeed, when asked at

---

[5] In the applications, Smith falsely stated that she had been employed at a company called Westvaco for the preceding three and one-half years.

12

trial by the district court if there were any objections to the introduction of the BMW loan application, Smith's counsel responded "No objections, your honor." In light of Smith's failure to object when specifically asked by the district court at trial, we review the district court's alleged error in admitting the loan applications for plain error only.

Smith argues that even under the plain error analysis, she is entitled to relief on this claim. She notes that the loan applications were not "wholly" unobjected to by defense counsel, and they had a profound impact on the fairness and integrity of the proceedings. And despite the government's contention that it was going to use the applications only to establish that Smith knew the FBI was on to her and that she shouldn't make any obvious big cash purchases that would raise suspicion, the government called a witness to verify that her employment statement on the loan application was indeed false. The prosecutor also referenced the falsity of the loan application in his closing argument. True, defense counsel's waiver of objection was based upon his understanding that the prosecutor would not touch upon the false employment statement, but it is important to note that when the government called the witness from Westvaco to establish that the employment statement on the application was false and when reference was made in closing arguments, no contemporaneous objection was made.

Without regard to whether the district court abused its

13

discretion in permitting the introduction of the two false loan applications, we conclude that any error in allowing such evidence was not "so obvious and substantial" that the district court's failure to correct it affected the "fairness, integrity, or public reputation of judicial proceedings."  *See* **Lopez**, 923 F.2d at 50. There is, therefore, no justification for exercising our discretion to remedy this otherwise forfeited error.

### D.  *Sentencing enhancement against Smith for obstruction of justice*

In this issue, Smith contends that the district court clearly erred in finding that pursuant to U.S.S.G. § 3C1.1, Smith's sentence should be upwardly adjusted two levels because she provided a materially false statement that significantly obstructed the investigation of the bank robbery.  The basis of the district court's departure was that Smith knew the robbers were females but intended to identify them as males in order to throw off investigators.  Smith's counsel argued that whatever false statement Smith made to the FBI was insignificant since investigators continued to focus on her as the prime suspect and since little effort was expended looking for black male suspects. Additionally, Smith's counsel argued, her statements to the FBI constituted nothing more than a denial of guilt and her hindrance of the investigation was insignificant.

The district court made the following fact findings with

14

respect to the obstruction enhancement:

> [the] Court finds Defendant obstructed justice and impeded the administration of justice by providing materially false statements to the Federal Bureau of Investigation, who has said that they would have and did go out searching for other people, causing them to redirect their focus of their investigation. This was significant in [that] the FBI officials over a three-week period focusing [sic] on finding two black bank robbers who in reality did not exist.

We review the district court's application of the Sentencing Guidelines to the facts for clear error. *See United States v. Cho*, 136 F.3d 982, 983 (5th Cir. 1998). The applicable provision of the Sentencing Guidelines on this issue provides:

> [i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Application Note 4(g) of § 3C1.1 states that "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense" qualifies as obstruction of justice for the purposes of the two-level enhancement provisions of § 3C1.1.

Smith argues that her statement should have been construed in the light most favorable to her under *United States v. Surasky*, 976 F.2d 242, 244 (5th Cir. 1992), and if her statements had been so construed they would have been deemed mere denials of guilt which do not qualify for the two-level obstruction enhancement under

15

application note 1.  Smith cites numerous cases for the proposition that her statement is distinguishable from the statements in those cases where a defendant named another individual specifically or gave false information where a fictitious suspect could at least potentially be located.  Her efforts are to no avail because her statement went far beyond merely denying her own involvement or refusing to provide information, which would not qualify for the obstruction enhancement; she specifically sent the FBI investigators on the trail of unknown suspects, whom she specifically described in order to obstruct the investigation into her own and her co-conspirators' involvement.

We find that, based on the evidence before it, the district did not clearly err in concluding that Smith obstructed justice by providing a materially false statement to law enforcement officers which significantly impeded the investigation.  Accordingly, Smith is not entitled to relief on this issue.

### E.  Sentencing enhancement against Smith as a leader or organizer

Smith next claims that the district court clearly erred in finding that pursuant to U.S.S.G. § 3B1.1, Smith's sentence should be upwardly adjusted four levels because she was the leader/organizer of a criminal activity involving five or more participants.

As noted above, we review the district court's application of

16

the Sentencing Guidelines to the facts for clear error. *See **United States v. Valencia***, 44 F.3d 269, 271-72 (5th Cir. 1995). The applicable provision of the Sentencing Guidelines here provides for a four-level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1. Application Note 2 of that section provides that the defendant must have been the "leader, organizer, manager or supervisor of one or more other participants." And application Note 4 sets forth the following factors which the district court should consider in determining whether a defendant had a leadership role:

> factors the court should consider include the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Application Note 4.

With respect to the leader/organizer enhancement, the district court made the following factual findings, which as noted above, we review for clear error:

> [the] Court finds Defendant was an organizer of the conspiracy to rob the bank. She provided the necessary data for the completion of the robbery. Were it not for her leadership and organizational role, the offense would not have taken place. In essence, Defendant Smith provided the necessary impetus to take the robbery forward. She organized everything about the robbery from the attire to be

17

worn by the robbers, when to rob the bank, the denominations to demand, location of the money, what to say to the victim teller, [sic] warn them of tracking devices, [and] how to enter and exit without the security camera recording their faces. Smith clearly played a proactive role in this particular case.

Smith argues that there was no evidence that she recruited accomplices or even received a share of the proceeds, and most importantly that there was no evidence that she exercised control or authority over any other participant. Smith also relies heavily on those decisions of this Court which require that a defendant be a leader or organizer of at least one other participant, exercising some degree of control or organizational authority in order to qualify for the leader/organizer enhancement. *See **United States v. Ronning***, 47 F.3d 710, 711-12 (5th Cir. 1995) (stating that "a leader or organizer must control or influence other people").

Smith analogizes her case to the Ninth Circuit's reversal of the leader/organizer enhancement given to a former bank employee who instructed his confederates on how the ATM machine at his former bank operated. *See **United States v. Harper***, 33 F.3d 1143, 1145 (9th Cir. 1994). The ***Harper*** court rejected the application of the leader/organizer enhancement based on the idea that "but for" the defendant's expertise the crime could not have been committed since Harper did little more than explain how the ATM machine worked when he was employed at the victim bank. ***Harper*** is distinguishable in that here Smith still worked at the bank, was

18

working on the day of the robbery, had placed a call the day of the robbery to tell her confederates when to arrive, and had told them where to go, what to do, what to say, and how to avoid detection. Though Smith may not have recruited her accomplices or have taken the lion's share of the proceeds, she arguably was the most integral part of the organization of the five co-defendants' efforts to rob the bank, and unlike the defendant in *Harper*, it was more than Smith's knowledge of bank procedures that qualified her for a leader/organizer enhancement; it was her integral involvement in planning, mapping out, orchestrating, and directing virtually every aspect of the robbery, down to the smallest details, which qualified her for leader/organizer role, and but for which the robbery would have never taken place.

In light of the foregoing, we do not find the district court's conclusion that Smith was the central organizer and leader to be clearly erroneous. She exercised her control over the other members as evidenced by their doing everything the way she directed them to and our review of the record leads us to conclude that there was more than enough evidence in the record to support a finding that she influenced and controlled at least one of her accomplices.

### F.   Sentencing enhancement against Smith for the abuse of a position of trust

In her final issue claiming error as to the enhancement of her

sentence, Smith argues that the district court clearly erred in finding that pursuant to U.S.S.G. § 3B1.3, Smith's sentence should be upwardly adjusted two levels because she abused a position of trust. Again, we review the district court's application of the Sentencing Guidelines to the facts for clear error. *See United States v. Valencia*, 44 F.3d 269, 271-72 (5th Cir. 1995). The applicable provision of the Sentencing Guidelines here provides for a two level enhancement if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3.

Smith's central argument here is that, as a part-time teller at the victim Bank of America branch, she did not hold a "position" of trust within the plain language of § 3B1.3. She concedes that though she may have abused a duty of trust, her conduct does not fall within the parameters of § 3B1.3.

The district court made the following factual findings with respect to the "abuse of a position of trust" enhancement:

> The Court finds Defendant abused her position of trust. Her position at the bank and her knowledge of the inner workings of the bank and its security measures significantly facilitated the commission of the offense. Smith facilitated armed bank robbery not mere theft or embezzlement. Although Defendant Smith was not vested with complete discretion, she held some substantial degree of trust. Her role in the offense is clearly a violation of the trust that significantly facilitated this particular crime.

While generally a bank teller engaged in the activity of taking cash from the till and putting it in is not utilizing a position of trust, the same teller certainly may engage in other activities in the course of her job that do involve aspects of trust which may be exploited to facilitate a crime. *See* **United States v. Craddock**, 993 F.2d 338, 343 (3d Cir. 1993). Here, the bank's entrusting Smith by making her privy to its internal operating and security procedures, as those procedures relate to robberies, and her use of such private information to facilitate a bank robbery, is such an exploitation of the trust given a teller by her employer bank.

Even a cursory review of the record evidence reveals that Smith's position enabled her to abuse the trust placed in her by the bank to keep its security procedures secret. She abused that trust in order to significantly facilitate the commission of this bank robbery, and based on the record, the district court's findings are anything but clearly erroneous on this point.

## G. Government's alleged violation of the anti-gratuity statute, 18 U.S.C. § 201(c)(2)

Appellants claim that the government violated the anti-gratuity provisions of 18 U.S.C. § 201(c)(2) by offering leniency to co-defendants in exchange for testimony. This Circuit has repeatedly rejected that argument. *See* **United States v. Haese**, 162 F.3d 359, 366-67 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1795

(1999).  This claim is wholly without merit and the appellants are not entitled to relief thereupon.


### III.  CONCLUSION

Having carefully reviewed the entire record of this case, having fully considered each of the appellants' issues on appeal, and for the reasons set forth above, we AFFIRM the convictions and sentences of both Kimberly S. Smith and Carmelita Mitchell.