# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20617

United States Court of Appeals
Fifth Circuit

**FILED**
November 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

GWENDOLYN BERRY, also known as Gwen Berry,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CR-385-1

Before BARKSDALE, STEWART, and COSTA, Circuit Judges.

PER CURIAM:*

Regarding her guilty-plea convictions for mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, respectively, and for making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1), Gwendolyn Berry contests four sentencing rulings: application of the enhancements for use of sophisticated means, Sentencing Guidelines § 2B1.1(b)(10)(C), and abuse of a position of trust, Guideline § 3B1.3; the $1,820,858.40 restitution

---

    * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 18-20617

order, 18 U.S.C. §§ 3663A and 3664 (Mandatory Victims Restitution Act); and the criminal-forfeiture order in the same amount, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).   AFFIRMED; REMANDED TO CORRECT JUDGMENT.

## I.

Amanda and Leonard Davis employed Berry as a bookkeeper.  Initially working through the firm of their financial advisor, Tye Williams, Berry subsequently worked directly for the Davises after they fired Williams.  Unlike the Phoenix-resident Davises, Berry lived and worked in Houston.  Her duties for the Davises included bookkeeping, bill-paying, and account-reconciliation. Berry's position afforded her access to the Davises' finances, including several bank accounts, their Next Financial Group, Inc. (Next), investment accounts, and section-529-education-savings accounts.

Unknown to the Davises, Berry began skimming money from their accounts to pay her and her family's personal expenses.  After moving money into the Davises' bank accounts, often from their investment and section-529 accounts, Berry transferred it repeatedly among other Davis accounts.  She then used some of it to pay, *inter alia*, her and her family's credit-card statements.

One of Berry's tasks was to record the Davises' financial transactions in Quicken, an accounting software.  She masked her fraudulent transactions by labeling them as legitimate business expenses, the Davises' expenses, or charitable donations.  The investigating Secret Service Agent identified 576 such fraudulent entries from November 2008 through September 2014, totaling $1,820,858.41.

A superseding indictment charged Berry with nine counts of wire fraud, in violation of 18 U.S.C. § 1343; three counts of mail fraud, in violation of 18 U.S.C. § 1341; and four counts of making and subscribing false tax returns, in

No. 18-20617

violation of 26 U.S.C. § 7206(1). It also notified her the Government sought: criminal forfeiture of approximately $1,749,000; a money judgment; and substitution of assets, pursuant to 21 U.S.C. § 853.

Berry pleaded guilty to all 16 counts, agreeing with the factual basis but disputing the loss, restitution, and forfeiture amounts. On 28 February 2018, the district court accepted her plea and found her guilty on all counts. After the presentence investigation report (PSR) was filed that May, Berry submitted 62 pages of objections, supported by 25 exhibits, contesting primarily: the loss and restitution amounts; and enhancements for substantial hardship, sophisticated means, and abuse of a position of trust. A revised PSR was filed on 16 August, recommending a Guidelines sentencing range of 51- to 63-months' imprisonment.

The Government had moved on 31 July for a preliminary forfeiture order. Berry objected on 1 and 13 August, requesting, *inter alia*, sentencing be continued pending a hearing on her forfeiture objections.

Sentencing, however, was held, as scheduled, on 23 August. Berry objected at the sentencing hearing, seeking a separate forfeiture hearing. After allowing her counsel an opportunity to contest the forfeiture amount, the court overruled the objection and sentenced her, *inter alia*, to 51-months' imprisonment; ordered restitution of $1,820,858.40 to the Davises and $344,268 to the IRS; and noted a final forfeiture order and money judgment would be entered, which occurred later that day. It declined to impose a fine.

II.

As noted, Berry does not challenge her convictions. She does, however, contest four sentencing rulings: the sophisticated-means and abuse-of-a-position-of-trust enhancements, and the restitution and forfeiture awards.

3

No. 18-20617

A.

Regarding the two challenged enhancements, although post-*Booker*, the Guidelines are advisory only, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 46, 51 (2007). If no such procedural error exists, a properly preserved objection to an ultimate sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 51; *United States v. Delgado-Martinez*, 564 F.3d 750, 751–53 (5th Cir. 2009). In that respect, for issues preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

A threshold issue is which Guidelines version applies. The court must use the version effective at sentencing, unless this would cause an *ex post facto* violation; if so, the court must use the version in effect when the offense was committed. U.S.S.G. §§ 1B1.11(a), (b)(1). The court must apply the same version in its entirety but also "consider subsequent amendments" that are "clarifying" and not "substantive changes". *Id.* § 1B1.11(b)(2).

Berry's scheme ended in 2014. When she was sentenced in 2018, the 2016 Guidelines were in effect. Because applying the 2016 Guidelines would cause an *ex post facto* violation, *see* Guideline § 2B1.1(b)(2)(A)(iii) (adding new "substantial financial hardship" enhancement), the court properly applied the 2014 Guidelines, in effect when the offense was completed.

1.

For Guideline § 2B1.1's two-level sophisticated-means enhancement, the district court's determination Berry used such means is a factual finding, upheld unless clearly erroneous: not "plausible in [the] light of the record as a whole". *United States v. Miller*, 906 F.3d 373, 376–77 (5th Cir. 2018) (citation omitted). This enhancement applies if the "offense otherwise involved

No. 18-20617

sophisticated means", Guideline § 2B1.1(b)(10)(C), with the commentary defining such means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense", Guideline § 2B1.1 cmt. n.9(B).

a.

Berry claims a 2015 Guidelines amendment is clarifying and, therefore, applicable retroactively. *See id.* app. C, Amend. 792 (adding language requiring defendant to have "intentionally engaged in or caused the conduct constituting sophisticated means"). She did not, however, preserve this issue in district court.

In that regard, although her objections to the initial PSR noted that the enhancement was amended in 2015, she never contended, or explained why, it was clarifying and, therefore, applicable retroactively. "[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court". *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017) (alteration in original) (internal quotation marks and citations omitted); *see Gabel v. Lynaugh*, 835 F.2d 124, 125 (5th Cir. 1988) (holding "trial court cannot have erred as to matters which were not presented to it"). Accordingly, the issue of this amendment's retroactive effect *vel non* is waived.

b.

For the following reasons, the court did not clearly err in finding Berry used sophisticated means. She contends her conduct was neither especially complex nor intricate because she created false Quicken entries the Davises could have easily discovered. Our court, however, has "affirmed the application of the sophisticated[-]means enhancement in cases involving some method that made it more difficult for the offense to be detected, even if that method was not by itself particularly sophisticated". *Miller*, 906 F.3d at 380

5

No. 18-20617

(quoting *United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013) (collecting cases involving false bookkeeping entries, unauthorized check signatures, and commingling legitimate with illegitimate transactions)); *see United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996) (multiple checks and bank accounts "obscur[ing]" connection between money and defendant).

Like defendant in *Miller*, Berry did not write checks to herself, instead writing them to vendors to pay her or her family's expenses. *See Miller*, 906 F.3d at 380. She falsified bookkeeping entries to pass these payments off as legitimate by, *e.g.*, mischaracterizing payments made to her credit card as payments of the Davises' expenses, thereby "obscur[ing]" the transaction. *See Clements*, 73 F.3d at 1340. She cycled money among the Davises' accounts, concealing her fraudulent transfers and "mak[ing] it more difficult for the offense to be detected". *See Miller*, 906 F.3d at 380. Her conduct was "something more than an open and transparent direct deposit and movement of funds". *See id.* (internal quotation marks and citation omitted).

2.

In challenging the two-level abuse-of-a-position-of-trust enhancement, Guideline § 3B1.3, Berry claims her position was merely a clerical role lacking discretion. The enhancement's applicability is also a factual finding, reviewed only for clear error. *Miller*, 906 F.3d at 376–77.

The enhancement applies if "defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense . . .". U.S.S.G. § 3B1.3. "A position of trust is characterized by (1) professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference), and (2) minimal supervision." *Miller*, 906 F.3d at 377 (quoting *United States v. Ollison*, 555 F.3d 152, 166 (5th Cir. 2009)). "Persons holding a position of trust 'ordinarily are subject to significantly less supervision than employees

whose responsibilities are primarily non-discretionary in nature.'" *Id.* (quoting U.S.S.G. § 3B1.3 cmt. n.1).

"[T]he extent to which the position provides the freedom to commit a difficult-to-detect wrong" is "a primary trait in determining whether a person is in a position of trust". *Id.* (internal punctuation and citation omitted). Much less important is defendant's title. *See, e.g.*, *id.* at 377–79 (affirming enhancement for payroll clerk); *United States v. Roberts*, 75 F. App'x 266, 267–68 (5th Cir. 2003) (same for accounts-receivable data clerk); *United States v. Smith*, 203 F.3d 884, 893–94 (5th Cir. 2000) (same for part-time teller).

For whether "defendant used that position [of trust] to facilitate or conceal the offense", *Miller*, 906 F.3d at 378 (citation omitted), the position "must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult)". U.S.S.G. § 3B1.3 cmt. n.1. This analysis considers whether "defendant occupied a superior position, relative to all people in a position to commit the offense, as a result of her job". *United States v. Pruett*, 681 F.3d 232, 248 (5th Cir. 2012) (citation omitted). Regarding Berry's claim the enhancement cannot apply because she was not a fiduciary, fiduciary duties support the enhancement, *see United States v. Dahlstrom*, 180 F.3d 677, 685 (5th Cir. 1999); on the other hand, our court has never required them. Nor does the Guidelines' commentary.

The court did not clearly err in finding Berry occupied a position of trust and used that position to significantly facilitate her fraudulent scheme's commission and concealment. Like defendant in *Miller*, Berry's "disbursement of funds and maintenance of [Quicken] accounting logs was essentially unsupervised, as demonstrated by the number of times" she misappropriated the Davises' money (576), "the amount she stole" ($1,820,858.40), and "the length of time she maintained the fraudulent scheme undetected"

(approximately six years). *See Miller*, 906 F.3d at 378. She had meaningful discretion because she had autonomy to circulate money through the Davises' accounts. And, her working remotely from the Davises enhanced this discretion.

Berry's reliance on *Ollison* is misplaced. In *Ollison*, the enhancement's application to a "secretary who made unauthorized charges on a corporate credit card that was issued to 1,200 other employees" was reversed because the secretary lacked "insider knowledge or access to private records that facilitated the commission of the theft". *Ollison*, 555 F.3d at 166, 169 (footnote omitted). Berry's position as the Davises' sole bookkeeper, however, gave her knowledge of the Davises' finances and allowed her to falsify Quicken records, thereby concealing her fraud. *See Pruett*, 681 F.3d at 248 (considering defendant's position relative to others). More closely analogous, therefore, are cases, affirming the enhancement's application, that *Ollison* distinguished. *See Smith*, 203 F.3d at 893 (affirming where part-time teller's position afforded "knowledge" of bank's "inner workings" and "security measures", thus "significantly facilitat[ing]" offense's commission); *United States v. Kay*, 83 F.3d 98, 102 (5th Cir. 1996) (same for defendant "ha[ving] access to [victims'] private banking records" and "ab[ility] to transfer funds from bank to bank without detection").

## B.

For the challenge to restitution, the award's legality is reviewed *de novo*; its amount, for abuse of discretion. *United States v. Mathew*, 916 F.3d 510, 515 (5th Cir. 2019) (citation omitted). A PSR's recommendations may be adopted "without additional inquiry if those facts have an evidentiary basis with sufficient indicia of reliability and the defendant does not . . . demonstrate that the information is materially unreliable". *United States v. Dickerson*, 909 F.3d 118, 129 (5th Cir. 2018) (quoting *United States v. Valles*, 484 F.3d 745, 759 (5th

No. 18-20617

Cir. 2007)), *cert. denied*, 139 S. Ct. 2685 (2019). The Government has the burden to establish the restitution amount by a preponderance of the evidence, 18 U.S.C. § 3664(e); the burden then "shifts to the defendant to prove the inaccuracy of the loss calculation". *Dickerson*, 909 F.3d at 129–30.

Restitution is limited "to those losses within the scope of the offense", requiring "examin[ation of] both the amount of the claimed losses and the scope of the offense conduct". *United States v. Hughey*, 147 F.3d 423, 437 (5th Cir. 1998). "[R]estitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea". *Mathew*, 916 F.3d at 516.

Although admitting she owes restitution, including not contesting the award to the IRS, Berry challenges the $1,820,858.40 awarded the Davises (pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3663A and 3664) on numerous bases: the indictment's itemized fraudulent transactions limit the amount; restitution should be to Next, not the Davises, because Next and the Davises have settled a related civil action; credible evidence does not support the amount; the method for calculating the amount was clearly erroneous; the court failed to account for former advisor Tye Williams' actions and his instructions to Berry; and she is not responsible for transfers from Next and section-529 accounts because she lacked independent authority to access these accounts. Each claim fails.

As an initial matter, we take judicial notice of a pending appeal in our court, number 19-20050, in which Berry and her husband challenge the district court's issuance of a writ of garnishment against certain retirement accounts. *E.g.*, Fed. R. Evid. 201. They appear to raise, in that separate appeal, the same challenges to the restitution order at issue in this appeal.

9

No. 18-20617

1.

The claim that the indictment's itemized losses limit restitution is inaccurate; what matters instead is "the temporal scope of the acts of conviction". *Mathew*, 916 F.3d at 516 (citation omitted); *see Hughey*, 147 F.3d at 438 (reversing restitution award as to portion occurring outside indictment's "temporal limitation"). For the mail- and wire-fraud charges, the superseding indictment detailed the duration and methods of Berry's scheme to defraud. Because a scheme to defraud is an element of mail and wire fraud (*see* 18 U.S.C. §§ 1341, 1343), restitution was proper for losses caused by conduct within the superseding indictment's temporal scope (September 2008 through September 2014), *see United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012).

2.

Regarding the civil settlement the Davises reached with Next, Berry claims:  restitution is properly owed to Next; the amount must be reduced because the settlement was for the "same loss" as her fraudulent conduct; and the settlement's language violates federal law and public policy. Each claim fails.

a.

Because Next's insurer settled a state-court action the Davises pursued against Next, Berry claims the MVRA mandates restitution be paid to Next, not the Davises. *See* 18 U.S.C. § 3664(j)(1) (requiring court to direct restitution to insurers who compensated victims for the "same loss"). (At sentencing, the Government contested that the settlement covered the loss caused by the fraud underlying this appeal, as discussed *infra*.)

Berry lacks constitutional standing for this contention because any error concerning to whom the restitution is to be paid will not harm her:  no matter the ultimate recipient, she remains liable for paying the same amount. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (internal

punctuation and citation omitted) (holding constitutional standing requires, *inter alia*, "injury in fact—a harm suffered . . . ."). (The Government's failure to raise this standing issue is immaterial in the light of our independent obligation to examine our jurisdiction. *See, e.g.*, *Lang v. French*, 154 F.3d 217, 222 (5th Cir. 1998) (citation omitted).)

b.

Concerning Berry's claim that restitution must be reduced "by any amount later recovered as compensatory damages for the same loss by the victim", 18 U.S.C. § 3664(j)(2), the parties dispute, as noted, whether the restitution awarded the Davises in August 2018 was for the "same loss" as in the Davises' October 2017 settlement with Next. The settlement defined the claims resolved as including, *inter alia*, those arising from a failed restaurant investment, casting doubt on Berry's claim the settlement was for the "same loss" as restitution.

We need not resolve this issue, however, because, even assuming *arguendo* the settlement was for the "same loss", this subsection is inapposite. Section 3664's language and structure carefully distinguish "victims" from third-party providers of compensation, such as insurers. *See* 18 U.S.C. § 3664. Section 3664(f)(1)(B) provides: "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution". 18 U.S.C. § 3664(f)(1)(B). A victim's receipt of third-party compensation for his losses before a court's ordering restitution is, therefore, "irrelevant" to the court's "calculati[ng] . . . defendant's total restitution liability". *United States v. Thompson*, 792 F.3d 273, 278 (2d Cir. 2015). "Rather, where a third party has already reimbursed the victim's losses, § 3664(j)(1) simply shifts *payment* of the restitution amount calculated under § 3663A(b) directly to that party." *Id.* at 279 (emphasis in original) (citation

omitted). As stated, Berry lacks standing to contest whether payment should have been shifted in this instance.

c.

As for Berry's claim the language of the settlement with the Davises is void for violating an unspecified "Federal law and public policy" against double recoveries, the foregoing statute provides no support. Nor does her reference to federal "public policy", as it goes without saying that federal criminal law is a "creature[] of statute". *E.g.*, *Dixon v. United States*, 548 U.S. 1, 7 (2006) (citation omitted).

3.

Regarding the restitution amount, Berry does not show the requisite abuse-of-discretion. The Secret Service Agent overseeing the investigation described, by affidavit, Berry's September 2008 through September 2014 scheme, itemizing each fraudulent transaction. After scrutinizing Berry's credit-card statements, the Agent included only those amounts used for Berry's, or her family's, personal benefit, omitting legitimate business expenses and wages. The probation office used this evidence to calculate the PSR's recommended loss amount. Along that line, Berry conceded at sentencing that the loss and restitution amounts are "probably the same", and she has not challenged the loss amount on appeal. Far from the speculation she claims, the Government proved the loss and restitution amounts, as the court concluded, "beyond" the requisite "preponderance of the evidence".

As discussed, the burden, therefore, "shift[ed]" to Berry to prove "inaccuracy". *See Dickerson*, 909 F.3d at 129–30 (citation omitted). "[G]eneral objections that the PSR overestimated the loss" are insufficient; what is required is "evidence capable of rebutting the detailed evidence presented in support of the PSR calculations". *Hughey*, 147 F.3d at 437–38 (citations omitted). Despite her voluminous objections and exhibits, she did not show

any listed amount was erroneous.  She instead asserted only generally that some unspecified expenses were for business trips, that wages she earned were included in the losses, and that her charitable donations were made with the Davises' knowledge.

Record evidence contradicts these assertions.  She charged business trips to her business credit card, assigned to her through Williams' business credit-card account; the Agent excluded these transactions.  Similarly excluded were the wages and taxes paid Berry from the Davises' accounts.  The only charitable donations included were those she made to her church and other organizations to which she or her family was closely affiliated.  Berry's guilty plea forecloses her contention she lacked access to the Davises' Next and section-529 accounts.  "A guilty plea is more than a mere confession; it is an admission that the defendant committed the charged offense."  *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991) (citation omitted).

The indictment stated, *inter alia*, she "accessed" these accounts, "move[d]" withdrawn funds "between" other Davis bank accounts, and then "disburs[ed]" them to herself.  Count four charged her with wire fraud for her transferring money from Next to a Davis bank account, and counts 10–12 charged her with mail fraud for thrice sending withdrawal forms to the section-529-account brokerage firm.

Both crimes require defendant's having made the communication or mailing "for the purpose of executing [the] scheme or artifice . . .".  18 U.S.C. §§ 1341, 1343.  Again, by pleading guilty, she agreed to the Government's submitted factual basis, which stated she accessed and caused transfers from Next and the section-529 accounts.

## C.

Restitution and forfeiture may, of course, be awarded in the same case. *See, e.g., United States v. Sanjar*, 876 F.3d 725, 750–51 (5th Cir. 2017), *cert.*

*denied*, 138 S. Ct. 1577 (2018).  A forfeiture order's legality is reviewed *de novo*; any related factual findings, for clear error.  *United States v. Reed*, 908 F.3d 102, 125 (5th Cir. 2018) (citation omitted), *cert. denied*, 139 S. Ct. 2655 (2019).

Berry challenges the criminal-forfeiture award  (pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c)) for three reasons: the district court violated Federal Rule of Criminal Procedure 32.2; the forfeiture violates 18 U.S.C. § 3572(b) (limiting court's ability to impose "fine or other monetary penalty" based on defendant's ability to "make restitution"); and forfeiture may not take the form of a money judgment against untainted substitute assets.  Each claim fails.

1.

As relevant in this instance, Rule 32.2 requires certain preliminary steps in criminal-forfeiture proceedings.  The indictment must notify defendant of the Government's intent to seek criminal forfeiture.  Fed. R. Crim. P. 32.2(a).  The indictment need not, however, "specify the amount of any forfeiture money judgment that the government seeks".  *Id.*  The court must, "[a]s soon as practical" after a guilty plea's acceptance, "determine what property is subject to forfeiture . . .".  *Id.* 32.2(b)(1)(A).  "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.*  This determination may be based on extant record evidence or "additional evidence" the court accepts as "relevant and reliable"; and, if forfeiture is "contested", the court must "conduct a hearing" on a "party's request".  *Id.* 32.2(b)(1)(B).  If the court finds property subject to forfeiture, it must "promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment".  *Id.* 32.2(b)(2)(A).  "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final." *Id.* 32.2(b)(2)(B).

No. 18-20617

Needless to say, Rule 32.2 is "not [an] empty formalit[y]", *United States v. Marquez*, 685 F.3d 501, 509 (5th Cir. 2012); but, failure to comply does not prevent a court's imposing forfeiture.  Because the Rule's requirements are "time-related directive[s]" that "keep[ ] a process moving by creating a deadline that is legally enforceable", a court may still "take the action to which the deadline applies if the deadline is missed".  *United States v. Marshall*, 872 F.3d 213, 223 (4th Cir. 2017) (quoting *United States v. Martin*, 662 F.3d 301, 308 (4th Cir. 2011)), *cert. denied*, 138 S. Ct. 1274 (2018); *see Dolan v. United States*, 560 U.S. 605, 610–16 (2010) (delineating among "jurisdictional" deadlines, "claims-processing rules", and "time-related directives").

Violations of Rule 32.2 are subject to Rule 52(a) (harmless error) when, as in this instance, the Government has advanced the claim, and must be "disregarded" if no prejudice results.  *United States v. Farias*, 836 F.3d 1315, 1330 (11th Cir. 2016) (quoting Fed. R. Crim. P. 52(a)); *Marquez*, 685 F.3d at 510 (citations omitted) (stating "general rule" that "error affects a defendant's substantial rights [as Rule 52(a) requires] only if . . . prejudicial").  "Error is prejudicial if there is a reasonable probability that the [outcome] would have been different but for the error."  *Marquez*, 685 F.3d at 510 (internal quotation marks and citation omitted).  In that regard, "[p]rocedural due process requires that an individual receive adequate notice and procedures to contest the deprivation of property rights".  *United States v. Smith*, 656 F.3d 821, 827 (8th Cir. 2011) (citation omitted); *see also United States v. Schwartz*, 503 F. App'x 443, 447–48 (6th Cir. 2012) (holding defendant given notice and hearing not denied due process, despite court's failure to enter preliminary forfeiture order).

A synopsis of the six months between Berry's pleading guilty and the court's sentencing her is instructive.  After her February 2018 plea, Berry requested, and was granted, a continuance of the PSR's preparation and

15

sentencing, in order to allow her to produce documents to the probation office. After the PSR's completion, she again requested, and was again granted, a continuance to file her objections.

Her 5 July 2018 objections comprehensively challenged the loss and restitution amounts, which she later conceded were "probably the same" as the forfeiture amount.  On 26 July, the Government responded to her objections before moving on 31 July for a preliminary forfeiture order, in the form of a $1,820,858.40 money judgment.

Berry objected on 1 and 13 August and sought a continuance of sentencing, pending a hearing on her forfeiture objections.  The court denied this third requested continuance and held the sentencing hearing, as scheduled, on 23 August.

Berry correctly notes that the court did not "determine the amount of money that [she would] be ordered to pay" until the 23 August hearing and that it never entered a preliminary order of forfeiture.  *See* Fed. R. Crim. P. 32.2(b)(1)(A); *id.* 32(b)(2)(A).  We need not address whether these errors violated Rule 32.2, however, because, even assuming they did, no prejudice resulted.

Berry's appellate brief addressed only the procedural errors, "independent of any prejudice they may have caused".  *See Marquez*, 685 F.3d at 510.  As Berry noted at oral argument, *Marquez* reviewed  the claimed Rule 32.2 violations for plain error.  *Id.*  On the other hand, Berry's timely objection in district court results in the violations' being reviewed for harmless error. *See Farias*, 836 F.3d at 1330.  The substantial-rights analysis is the same, however, under both Rules 52(a) (harmless error) and 52(b) (plain error), with the "important" distinction that the Government bears the burden of proving harmless error.  *See United States v. Olano*, 507 U.S. 725, 734–35 (1993).

Berry's addressing only the procedural errors is insufficient to show prejudice. *See Marquez*, 685 F.3d at 510. At oral argument on appeal, she conceded she did not claim any prejudice until then, at which point, she based prejudice on a claimed inability to subpoena Tye Williams or unspecified Next employees. It goes without saying that our court does not consider this belated contention. *See, e.g.*, *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 407–08 (5th Cir. 1985) (holding issue raised only at oral argument waived).

In any event, it is unclear how the court's failure to hold a separate hearing on forfeiture prevented her from seeking evidence from Williams or Next employees, which she could have done in the six months between pleading guilty and sentencing. Such evidence would have presumably been relevant to the loss and restitution amounts, yet she did not seek it before filing her otherwise-exhaustive objections.

Nor was there prejudice based on a due-process violation. *See Smith*, 656 F.3d at 827–28 (holding defendant received due process where indictment provided notice of forfeiture, defendant filed motion opposing forfeiture, and court allowed argument at hearing before entering final forfeiture order). The indictment notified Berry the Government sought forfeiture, and she acknowledged at her rearraignment that forfeiture would be discussed at sentencing. Her two continuances allowed her ample time not only to submit 25 exhibits to the probation office but also, following the PSR's completion, to object to the loss and restitution amounts, which, as noted, she later conceded were "probably the same" as the forfeiture amount. As discussed, the court held a hearing and considered argument concerning forfeiture and details of the loss and restitution amounts.

### 2.

Berry next claims the forfeiture violated 18 U.S.C. § 3572(b), requiring that, if defendant "has the obligation to make restitution to a victim", then "the

court shall impose a fine *or other monetary penalty* only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution". 18 U.S.C. § 3572(b) (emphasis added).  She claims "other monetary penalty" includes forfeiture and, accordingly, asserts forfeiture leaves her unable to make restitution.  The Government counters that the statutory regime is directed toward fines (which, as noted, the district court did not impose), and that "other monetary penalty" therefore does not refer to restitution.

We need not resolve this statutory question.  The district court noted that Berry's financial statements submitted to the probation office for its preparation of the PSR indicated she had sufficient assets to satisfy both restitution and forfeiture.  To the extent she may not, the Government represented to the district court that the Government would "ask the Department of Justice to allow us to apply what we collect using the money judgment to – as credit against the restitution".  The district court accepted this as a "representation to the Court by the government" and awarded forfeiture on the understanding the Government would comply with its representation.

The Government reaffirmed this position at oral argument on appeal, which is also accepted as a representation.  Our court has also previously noted the Attorney General's authority, pursuant to 21 U.S.C. § 853(i)(1), to restore forfeited property to victims, and the Department of Justice's policy to "collect" forfeited assets "to be applied to restitution" when "defendant lacks the resources to make full restitution . . .".  *Sanjar*, 876 F.3d at 751 (quoting U.S. Dep't of Just., Asset Forfeiture Pol'y Manual § 12E.2 (2016)).

### 3.

Berry concedes her claim that no statute authorizes personal money judgments to recover criminal forfeiture is foreclosed.  *See United States v. Nagin*, 810 F.3d 348, 353 (5th Cir. 2016) (footnote omitted) ("[W]e join our

sister circuits in holding that the combined operation of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) authorizes personal money judgments as a form of criminal forfeiture".).

She also contends the Government must comply with 21 U.S.C. § 853(p)'s preconditions for a money judgment to be proper. *See* 21 U.S.C. § 853(p) (requiring forfeiture of substitute property where defendant has, for example, transferred property subject to forfeiture to a third party). Circuits are split on this question, and our court has previously declined to reach it. *Nagin*, 810 F.3d at 353 n.5 (noting disagreement between sixth and ninth circuits).

We do not reach this claim because Berry fails to brief it. A claim is waived if the brief simply "list[s]" the claim without "offer[ing] [any] further arguments or explanation". *E.g., United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (citations omitted); *see* Fed. R. App. P. 28(a)(8)(A) (requiring argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Although Berry notes the circuit split in a footnote, she does not explain why 21 U.S.C. § 853(p) controls.

## D.

The Government notes the district court failed to check the amended judgment's forfeiture reference. Rule 32.2(b)(4)(B) requires the court to "include the forfeiture order, directly or by reference, in the judgment" but authorizes correction of such clerical errors, under Rule 36. *United States v. Alvarez*, 710 F.3d 565, 568 (5th Cir. 2013).

## III.

For the foregoing reasons, the judgment is AFFIRMED, and this matter is REMANDED to district court to correct the judgment.